(No. 43299.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. IRA J. COLEMAN, JR., Appellant.

*Opinion filed November 24, 1971.*

GERALD W. GETTY, Public Defender, of Chicago, (MICHAEL WEININGER and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General; ROBERT A. NOVELLE, Assistant State's Attorney; ZENON FOROWYCK, (Graduate Law Student); of counsel,) for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Coleman, was jointly indicted with Benjamin Arnold and Fred L. Thompson for the murder of Coleman's wife, Ollie Coleman. Arnold and Thompson pleaded guilty and Coleman was tried by a judge without a jury in the circuit court of Cook County. He was convicted and sentenced to a term of from 40 to 60 years in the penitentiary. This is a direct appeal from his original conviction.

The defendant, Coleman, contends that his constitutional right to be indicted by a grand jury (Cons. of 1870, art. II, sec. 8) was violated when the trial judge, after hearing the testimony, allowed the People to amend the indictment during the trial by interlineation. He also claims that he was not proved guilty beyond a reasonable doubt and that error was committed when evidence concerning insurance policies on his wife's life was introduced into evidence.

Coleman, Arnold and Thompson were jointly indicted in a two-count indictment. The indictment was amended

by interlineation to read as follows (the italicized portion being that which was added during the trial by interlineation):"*** Benjamin Arnold, Fred L. Thompson and Ira J. Coleman committed the offense of murder, in that they, intentionallly and knowingly stabbed *and/or asphyxiated* and killed Ollie Coleman with a knife, *and/or hands and/or a bed sheet and/or blanket* without lawful justification ***." The second count was likewise amended in the same manner by interlineation.

The murder was committed on February 15, 1969, and the indictment was returned on April 28, 1969. On May 6, 1969, two attorneys entered their appearances for all three defendants. One of these attorneys has represented Coleman at all stages of the proceedings. On July 16, 1969, Arnold and Thompson withdrew their pleas of not guilty and pleaded guilty. The court continued their cases to allow time for a pretrial sentence investigation. They were both sentenced on September 12, 1969, for identical terms of 14 years to 14 years and a day. The defendant, Coleman, waived a trial by jury and his trial before the court commenced on July 18, 1969. The principal prosecution witnesses were Arnold and Thompson. They testified that they had pleaded guilty to the charge and testified that there were no promises made to them in exchange for their cooperation. Both of these men were incarcerated at the time of trial and were not sentenced until after the conclusion of Coleman's trial.

The prosecution testimony was that Coleman had hired Arnold and Thompson to kill his wife in return for which they would find $1400 in his home. Both Arnold and Thompson testified that they previously had several conversations with the defendant Coleman concerning how to kill her. They first considered striking her with an automobile as she waited for a bus early in the morning on her way to work. To do this they needed to steal a car. They testified that Coleman gave one of them $25 for this

purpose. They said Coleman told them his wife was dying of cancer and medical expenses were costing him a lot of money. Other arrangements were also made but not carried out. On the night in question all three of them had left their work at a tire store where they had known each other for some time and went to a tavern and commenced drinking. During the evening the defendant gave them a key to his home and a butcher knife wrapped in newspapers. It was decided that they were to wait at a corner near Coleman's home and when he passed them in his car with his two daughters they were to enter the home and kill Mrs. Coleman and take the money. They claim that Coleman told them that he would be taking his daughters bowling. Before parting Coleman took them to a store where he gave them some money to purchase gloves.

After Arnold and Thompson saw Coleman drive by with his daughters they walked to his house and found the front door unlocked. They entered the house and found Mrs. Coleman in the bedroom. They sprayed "mace" in her face and Thompson put his hands around her mouth and throat. Arnold took the knife which Coleman had given him and stabbed her once or twice and the knife broke. Then Arnold grabbed her around the throat and held his hands over her mouth while Thompson went to the kitchen and returned with a flat iron and struck her on the head with it several times. Thereafter Thompson took a sheet and covered her head until she no longer was breathing. They then ransacked the house searching for the $1400 but could not find it.

Thompson was the first witness for the People and testified as to the occurrence. During the cross-examination of Thompson the People asked leave to amend the indictment in the manner indicated above and the court permitted the People to do so over the objection of the defendant. Subsequently a coroner's pathologist testified that death was due to asphyxiation.

Section 111—5 of the Code of Criminal Procedure (Ill.Rev.Stat. 1969, ch. 38, par. 111—5) provides that an indictment, information or complaint which charges the commission of an offense in accordance with section 111—3 of the Code (Ill.Rev.Stat. 1969, ch. 38, par. 111—3) shall not be dismissed and may be amended on motion of the State's Attorney or defendant at any time because of "*formal* defects, including: \*\*\* (f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged." (Emphasis supplied.) Although subparagraph (f) authorizes the amendment of an indictment using alternative or disjunctive allegations as to acts and means, defendant contends that such an amendment is not permissible in a murder indictment. Defendant relies on *Guedel v. People (1867), 43 Ill. 226, and People v. Lukoszus (1909), 242 Ill. 101,* which hold that in an indictment for murder the means by which the killing was accomplished is an essential part of the indictment and must be alleged if known. Defendant thus concludes that the means used to kill Mrs. Coleman was not a formal defect in the indictment which could be changed by amendment under section 111—5. He contends that after he had been charged with the murder of his wife by stabbing with a knife the indictment could not thereafter be amended on motion of the State's Attorney to charge murder by asphyxiation by use of hands, bed sheet or blanket.

Section 111—3 of the Code of Criminal Procedure referred to in section 111—5 provides for the form of making a criminal charge as follows: "(a) A charge shall be in writing and allege the commission of an offense by: (1) stating the name of the offense; (2) citing the statutory provision alleged to have been violated; (3) setting forth the nature and elements of the offense charged; (4) stating the date and county of the offense as definitely as can be done; and (5) stating the name of the accused, if known,

and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." (Ill.Rev.Stat. 1969, ch. 38, par. 111—3.) The committee comments to this section (S.H.A., ch. 38, sec. 111—3, p. 343), after discussing the two general methods previously used in drafting a criminal charge, state that subsection (a) of this section is designed to clarify and make uniform the method to be used in the charge. The author of the comments further states: "It is clear that many of the old pleading technicalities are no longer required under the existing law."

In *People v. Cohen, 303 Ill. 523,* this court stated at page 525: "Great niceties and strictness of pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparations for his defense for want of greater certainty or particularity. [Citation.] The criminal law is fast outgrowing those technicalities which grew up when the punishment for crime was inhuman and when it was necessary for the courts to resort to technicalities to prevent injustice from being done."

The gist of the offense with which the defendant was charged in this case was the overt act of intentionally taking the life of his wife. Of this the defendant was adequately informed by the indictment. He could not claim that the allegations of the amendment as to the means of taking her life have taken him by surprise or that he has been unable as a result thereof to adequately prepare his defense to these additional allegations. He did not seek a continuance after the amendments were allowed for the purpose of further preparation. He has shown no prejudice as a result of the amended allegation but has asserted the mere technical objection thereto. (See *People v. Corder, 306 Ill. 264, 272.*) Under these circumstances the court did not err in permitting the amendment to the indictment.

Although *Guedel* holds that a person may be twice tried for the murder of the same individual if different means of bringing about the death are charged in the indictments, we view that decision as having been dictated by the technical requirements of the law of a former era, the need for which no longer exists. The court in that case acknowledged the harshness of the rule. Since the overt act of intentionally taking his wife's life is the gist of the offense, the amendment to the allegation as to the means used does not charge a different crime nor raise the possibility that defendant may twice be tried for the murder of his wife.

Whatever may have been the justification for the extremely technical position assumed by the court in *Guedel* and *Lukoszus* we can see no reason for perpetuating these technicalities under our Criminal Code of 1961 and the Code of Criminal Procedure of 1963. The defendant was charged with the murder of his wife in the manner prescribed in the Code. We hold that the allegation of the means used to accomplish her death was not essential but was a formal part of the indictment which could be amended pursuant to 111—5 of the Code of Criminal Procedure of 1963. This court has recently held in *People v. Grieco (1970), 44 Ill.2d 407,* that it is only where the means used are integral parts of the offense that they need be averred, as for example in the crime of assault with a deadly weapon.

Defendant also contends that he was not proved guilty beyond a reasonable doubt and that he was denied a fair trial by the introduction into evidence of two insurance policies on the life of his wife. With reference to the question of the admission of the insurance policies both the defendant and the People cite *People v. Gougas, 410 Ill. 235,* which holds that the use of evidence relating to insurance on the life of a deceased in a prosecution for murder without proof that the defendant knew of the

existence of the policy is not competent as evidence of motive. In this case there was testimony from which the trier of the fact could conclude that the defendant did know of the existence of the policies of life insurance on the life of his wife. Under this state of the evidence it was proper for the court to admit the policies and for the trier of fact to weigh this evidence together with all of the other evidence on the question of the defendant's motive in the killing. We find no error in the admission of these policies into evidence.

We also believe that the defendant was proved guilty beyond a reasonable doubt. In addition to the evidence of Arnold and Thompson related above, they also testified that subsequent to the murder Coleman paid them $250 on one occasion and $80 and $20 on subsequent occasions which they split and that Coleman stated he would pay them the balance when he received the monies from an insurance company insuring his wife's life. The defendant testified in his own behalf and denied the crime. In his conversations with Arnold and Thompson he had stated that he had his money at home in a metal box. On the night in question he phoned his wife in the presence of Arnold and Thompson and stated that he would come home and they would go bowling. He stated that his wife was a good woman, a hard worker and was not sick. His daughter testified that when her father got home her mother had a headache and did not want to go bowling but when her little sister started crying he took them bowling and her mother stayed home. In *People v. Carr, 22 Ill.2d 619,* we held that the trial judge who saw and heard all the witnesses was in a much better position to determine their credibility and the weight to be accorded their testimony. Where there is no jury it is primarily for the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony and this court will not set aside a conviction which depends on

such matters unless it is necessary to prevent an apparent injustice.

In *People v. Ross, 4l Ill.2d 445,* this court commented on the testimony of an accomplice and stated that even the uncorroborated testimony of an accomplice if it satisfied the court or jury beyond a·reasonable doubt is sufficient to sustain a conviction of a felony. Such testimony is not of the most satisfactory character and often is attended with quite serious infirmities such as malice toward the accused, promises or hopes of leniency or the hope of benefit from the prosecution. Yet such infirmities in turn go to the question of weight of the evidence and the credibility of the witness, matters peculiarly within the province of the court or jury in the first instance. If the jury or trial court is satisfied by the testimony of an accomplice that the defendant is guilty beyond a reasonable doubt we will not disturb a conviction on review unless it is plainly apparent that such degree of proof is lacking. We find no such lack of proof here.

The judgment of the circuit court of Cook County will therefore be affirmed.

*Judgment affirmed.*