THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL McKENDRICK, Defendant-Appellant.

First District (3rd Division) No. 84—1169

Opinion filed November 13, 1985.—Rehearing denied December 26, 1985.

Daniel J. Stohr, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan Cherry, Sharon Johnson Coleman, and Virginia M. Bigane, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Michael McKendrick, was charged with three counts of rape, three counts of deviate sexual assault, 10 counts of armed violence, two counts of unlawful restraint, four counts of home invasion and one count of intimidation. All the offenses involved the same complainant and were committed on three separate dates. Following a bench trial, the trial court found defendant guilty of all charges and sentenced him to a term of 18 years on each count of rape, the sentences to run concurrently.

On appeal, defendant contends that he was not proved guilty of rape beyond a reasonable doubt; that he was denied effective assistance of counsel; that the court improperly allowed the State to amend the indictment for deviate sexual conduct at the close of its case; that defendant was improperly tried for three separate offenses simultaneously; that the court improperly found defendant guilty of more than one offense arising out of the same physical act; that defendant was not proved guilty of intimidation or home invasion; that the court improperly admitted into evidence tape recordings of certain telephone conversations; and that the sentences imposed were harsh and excessive.

Complainant testified that on August 31, 1982, at about 7 p.m. she returned from the store to her apartment in Chicago. She was grabbed from behind by defendant as she placed her shopping bag on the kitchen floor. Defendant, who was armed with a knife, was formerly complainant's boyfriend. Defendant bound and gagged her, stripped her clothes off, and struck her. Defendant then took her camera and took photographs of her for 20 to 25 minutes.

Defendant removed the tape from her mouth and forced a glass of vodka and Valium down her throat. When she attempted to scream, he struck her in the head. Defendant then committed an act of anal intercourse. He dragged her to a bed, struck her, and tied complainant's hands and feet to the bed posts in spread-eagle fashion. He then raped her. When he finished, he dressed and cut complainant's hair off while she still lay naked on the bed. When complainant cried, defendant held the scissors up and threatened to cut her face. After about six hours, he pulled out complainant's telephone cord and de-

parted.

Complainant informed a neighbor, and the police were summoned. Complainant was taken to a hospital, where it was determined that she had suffered swelling on her right lateral skull as well as multiple contusions to her head, chest, waist, and shin. Vaginal and rectal swabs were negative for spermatozoa. Photographs of complainant depicting her hair shorn were taken and were identified by her at trial.

Complainant testified that at approximately midnight on November 29, 1982, she was leaving her apartment when she saw defendant in the hallway. Defendant, armed with a screwdriver, forced her back into the apartment and knocked her to the floor. He grabbed a kitchen knife and threatened to kill her. Defendant ripped her clothes off and raped her. He then forced complainant to commit an act of oral sex. He raped her twice more, and demanded that she drop the criminal charges against him. Defendant finally left the apartment at 5 a.m., at which time complainant called the police. The police did not take complainant to a hospital because she was due at a hospital to visit her dying mother.

Complainant further testified that on March 29, 1983, at 5 p.m., defendant forced his way into her apartment as she left to empty garbage. Defendant threatened complainant with a kitchen knife, struck her, dragged her around the apartment, removed her clothes and raped her. He blamed her for his having been in jail and for losing his job. Defendant then forced her to commit an act of oral sex. Complainant received a telephone call from her sister, who in turn called the police. Defendant put on his clothes, looked out the window, saw a squad car pull up, and fled. The police took complainant to a hospital, where it was determined that she had suffered superficial abrasions to her neck and upper lip and scrapes to her right elbow and left knee. An examination of vaginal swabs and complainant's undergarments revealed the presence of spermatozoa.

On cross-examination, complainant testified that she had dated defendant regularly before the first attack in August 1982. She had voluntarily engaged in sexual intercourse with defendant, but had terminated her relationship with him before the August 1982 assault. In March 1982, she had signed a complaint against defendant for aggravated assault with a knife, but he was not arrested. At that time defendant threatened complainant with a knife and forced her to have oral sex with him. In April 1982, they resumed their relationship including regular sexual intercourse.

After the August 1982 attack she first heard from defendant on

September 4, 1982, when he telephoned her. Thereafter, defendant telephoned 10 to 20 times a day threatening her. On November 3, 1982, she observed defendant in the hall of her building and immediately called the police. After the November 1982 attack, defendant persisted in telephoning complainant until January 1983, when she agreed to meet him to get the license plate number of his automobile. She dined with him on January 7 and 8, but he was driving a different automobile. On January 9, 1983, she obtained the license number. On that evening, after they parted, defendant forced his way into her apartment and raped her. Complainant notified police of the license plate number in February. Although defendant continued to telephone her, complainant did not see him until March 1983. Complainant was under the care of a psychiatrist since 1978 because of emotional distress and depression. The illness had resulted in hospitalization and a leave of absence from her job. She was taking Valium and also attended group therapy sessions in 1981 and 1982.

Complainant's sister testified that she spoke with complainant over the telephone on August 21, 1982, and that complainant was hysterical and crying. The sister saw complainant an hour later, and she had bruises on her face, her hair was cut to the scalp, and she had knife cuts on her throat. Complainant told her sister that she had been raped. Complainant again telephoned her sister on November 29, 1982, in an upset condition and stated that "he did it again." The sister saw complainant that afternoon and observed that she had scratches and knife cuts on her throat.

The sister again spoke to complainant over the telephone on March 29, 1983. Complainant sounded upset and the witness heard struggling with the telephone and defendant's voice in the background. Complaint's sister telephoned the police.

Defendant testified and denied each and every allegation contained in the indictments against him. Defendant testified that he had vaginal, oral and anal intercourse with complainant throughout their relationship and that all the sexual acts had been performed with complainant's consent. Defendant had previously tied up complainant as part of their sexual activity.

The prosecution introduced tapes of 98 telephone conversations between defendant and complainant from February 15 to February 24, 1983. The conversations had been recorded pursuant to court order. All calls were placed by defendant and most of them terminated by complainant. Throughout the conversations, defendant asked complainant to meet with him while she repeatedly begged him to leave her alone. She refused to see him because he raped her and cut off

her hair.

Defendant initially contends that he was not proved guilty of rape beyond a reasonable doubt. He maintains that complainant's testimony was not clear and convincing, and that there was insufficient corroborative testimony.

■■ To sustain a conviction for rape, the testimony of the victim must be clear and convincing, or corroborated by some other facts and evidence. (*People v. Thompson* (1978), 57 Ill. App. 3d 134, 372 N.E.2d 1052.) Where a complainant's testimony is clear and convincing, that testimony alone is sufficient to support a rape conviction (*People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285), even when contradicted by the accused. (*People v. Williams* (1983), 115 Ill. App. 3d 276, 450 N.E.2d 851.) Further, the credibility of the witnesses is an issue best determined by the trier of fact who heard the testimony and observed the demeanor of the witnesses. (*People v. Sanchez* (1982), 110 Ill. App. 3d 893, 443 N.E.2d 252.) A reviewing court will not disturb a trial court's finding in this regard unless the evidence, on the whole, is so unsatisfactory as to raise a reasonable doubt concerning defendant's guilt. *People v. Sanchez* (1982), 110 Ill. App. 3d 893, 443 N.E.2d 252.

■ We find complainant's testimony concerning the three rapes to be clear and convincing. She related in detail the events which led up to each attack, the rapes themselves and the actions taken by both parties after each incident. Her testimony concerning defendant's use of weapons and bindings resulting in injury to her as well as threats of physical violence support the conclusion that defendant forced her to have sexual intercourse against her will. We agree with the trial court that "it would be stretching the human credulity to accept the defense that he [defendant] performed these acts on mutual consent of the parties."

Moreover, complainant's testimony is substantially corroborated by the other evidence presented at trial. Her sister testified that she saw or spoke to complainant after each incident and observed facial bruises, knife cuts on her throat and hysterical behavior. A photograph of complainant depicting her with her hair shorn was introduced in evidence. And complainant promptly reported each incident to the police. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667.) The stipulated medical evidence revealed that complainant suffered multiple bruises, swelling, abrasions and cuts on her face, chest and limbs after the August and March rapes. Finally, the tapes of the telephone conversations between the parties corroborated the absence of complainant's consent.

■ We reject defendant's contention that complainant was not credible because she was mentally ill and continued to date defendant through January 1983. Complainant suffered emotional distress, but was competent to testify. A witness is competent if she understands the nature of the oath and has sufficient mental ability to give a correct account of what she has seen and heard. (*People v. Robinson* (1977), 47 Ill. App. 3d 48, 361 N.E.2d 759.) Complainant gave a clear, undistorted, convincing and detailed account of defendant's conduct on the three dates in question. There is nothing in the record to suggest that complainant's emotional condition affected her ability to recall and explain events or that her testimony lacked credibility. Further, complainant did not "date" defendant after the November attack. She met with defendant in January 1983 only to obtain the license plate number of the vehicle in which defendant was ultimately apprehended in February 1983. The trial court correctly found that complainant's prior consent to sexual intercourse did not suggest consent to these "odious" acts and that complainant was a credible witness.

■ We likewise reject defendant's contention that there was insufficient corroborative evidence of the three rapes. We find untenable his claim that the facts that complainant had been beaten and shorn of hair were consistent with the defense of consensual, "kinky" sex. We view the prompt complaint, evidence of injuries, photograph, tapes, and complainant's sister's testimony as abundant corroborative evidence of lack of consent. Since the testimony was elicited on cross-examination, we also find that the sister's testimony, now complained of as hearsay, was competent evidence. *People v. Weis* (1983), 120 Ill. App. 3d 597, 458 N.E.2d 157.

■ Defendant next contends that he was denied effective assistance of counsel at trial because trial counsel failed to investigate complainant's psychiatric records; presented a farcical closing argument admitting defendant's guilt; and improperly cross-examined complainant's sister.

To show ineffective assistance of counsel, defendant must demonstrate that judged by an objective standard of reasonableness, counsel's performance was inadequate, and that defendant suffered prejudice as a result of counsel's incompetence, *i.e.*, that but for counsel's unprofessional errors there is a reasonable probability that the results of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) The issue of coun-

sel's competency is to be determined from a consideration of the totality of counsel's conduct, not isolated incidents. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270, *cert. denied* (1985), 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857.) A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270.

We are not persuaded that judged by an objective standard defendant's counsel was incompetent or that without the alleged errors the outcome of the trial would have been different. Counsel sufficiently cross-examined complainant about her previous psychiatric treatment. There was no necessity to investigate her psychiatric records. Moreover, any failure to investigate complainant's psychiatric records would not have affected the trial court's finding that complainant's testimony was clear, credible and convincing.

We also reject defendant's assertion that defense counsel's use of the term "codonation" to describe complainant's behavior in his closing argument was tantamount to an admission of defendant's guilt. Nor did the characterization of defendant's interest in complainant as "obsessive" or the statement that defendant "couldn't control his emotions" constitute an admission of guilt. During closing argument, counsel reasonably set forth and argued the defense of consent. The closing argument did not demonstrate incompetence and was not prejudicial to defendant.

■ Finally, defense counsel did not act as a "third prosecutor" in his cross-examination of complainant's sister. On cross-examination she testified that complainant said defendant held a knife to her throat, forced pills down her throat, disconnected her telephone, and that complainant's neck was bruised and she was bleeding after the first attack. Cross-examination is a matter of judgment and trial strategy and, as such, is beyond the review of this court to determine incompetence. (*People v. Conley* (1983), 118 Ill. App. 3d 122, 454 N.E.2d 1107.) Moreover, although counsel elicited hearsay statements from complainant's sister, a complete review of the examination reveals that a portion of her testimony conflicted with complainant's testimony. Such an examination reflects a strategy to attack the credibility of both witnesses and does not establish incompetence.

■ Defendant also contends that the trial court erred by permitting the State to amend the indictments for deviate sexual assault. The first indictment charged defendant with deviate sexual assault by compelling an act of oral copulation on August 31, 1982. The second indictment charged him with deviate sexual assault by compelling an

act of anal intercourse on November 29, 1982. At trial, complainant testified that defendant forced her to commit an act of anal intercourse on August 31, and an act of oral copulation on November 29. The trial court allowed the State to amend both indictments at the close of the case to conform to the evidence. In the first indictment, the word "anal" was substituted for "oral," and in the second indictment "oral" was substituted for "anal."

We initially note that defendant was not sentenced for deviate sexual assault. However, even though it is unnecessary to consider this issue, we find that the indictments were properly amended.

Section 111—5 of the Code of Criminal Procedure of 1963 provides that an indictment "may be amended on motion by the State's Attorney or defendant at any time because of formal defects." (Ill. Rev. Stat. 1981, ch. 38, par. 111—5; *People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E.2d 721.) An indictment may not be broadened by amendment except by the grand jury in order to protect individuals from being prosecuted for a different offense than the one charged. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508, *cert. denied* (1982), 455 U.S. 1024, 72 L. Ed. 2d 144, 102 S. Ct. 1726.) Here, the State did not alter any essential element of the indictment nor broaden its scope and did not change the offense. Each indictment properly charged defendant with deviate sexual assault and the amendments merely changed the manner in which the offense was committed. The manner in which the offense is committed is a formal part of the indictment which can be amended pursuant to section 111—5. *People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E.2d 721.

■ Defendant further contends that the three rape charges were improperly joined for trial where the offenses were separate and distinct. Joinder of criminal offenses at trial is permitted where the charges are based upon the same act or upon two or more acts which are part of the same comprehensive transaction. (Ill. Rev. Stat. 1981, ch. 38, pars. 111—4, 114—7; *People v. Benka* (1983), 117 Ill. App. 3d 221, 453 N.E.2d 71.) Whether offenses should be joined for a single prosecution is a matter within the discretion of the trial court. *In re Stokes* (1982), 108 Ill. App. 3d 637, 439 N.E.2d 514.

Defendant actively participated in the motion to consolidate the three indictments for trial and actually consented to the joinder. Where a defendant neither objects to the joinder of charges at trial nor argues for a severance in his motion for a new trial, he has waived the issue on appeal. (*People v. Beacham* (1977), 50 Ill. App. 3d 695, 365 N.E.2d 737.) Furthermore, there was clearly an identity of evidence providing a link between the offenses here, thus justifying a

joinder of charges in a single trial. *People v. Freeland* (1981), 103 Ill. App. 3d 94, 430 N.E.2d 277.

■■ Defendant next argues that he was improperly found guilty of 10 counts of armed violence because those counts and the underlying offenses arose out of the same physical acts. Defendant was convicted of three counts of armed violence based upon rape as the underlying felony, three counts of armed violence based upon deviate sexual assault, two counts of armed violence based upon home invasion, one count of armed violence based upon unlawful restraint, and one count of armed violence based upon intimidation. Sentence, however, was imposed only for the rape convictions and not any of the convictions for the underlying felonies or armed violence. "The final judgment in a criminal case is the sentence, and, in the absence of the imposition of a sentence, an appeal cannot be entertained." (*People v. Caballero* (1984), 102 Ill. 2d 23, 51, 464 N.E.2d 223, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362.) In *Caballero*, the court dismissed the appeals from the convictions for armed violence and unlawful restraint where sentence was imposed only on defendant's murder convictions. Accordingly, we need not consider defendant's argument concerning the armed violence convictions.

■■■ Defendant also contends that the trial court erred in finding him guilty of intimidation. Although we need not consider this issue (*People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223), we conclude that defendant was proved guilty of intimidation beyond a reasonable doubt.

Intimidation requires specific intent to cause an individual to perform or to prevent the performance of certain acts. (*People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289; Ill. Rev. Stat. 1983, ch. 38, par. 12—6(a)(1).) Intent may be deduced by the trier of fact from the facts and circumstances surrounding the offense. *People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.

On March 29, 1983, defendant attempted to prevent complainant from testifying against him about the earlier offenses by threatening her with physical harm and actually harming her. On that date defendant threatened complainant with a knife, told her that he had been in jail for three weeks and that she "had done this to him." Defendant then raped complainant and told her that she should not "go through with this" and that he would leave her alone if she would "just stop this whole thing." Defendant also referred to the "judges and lawyers." The trial court properly inferred from defendant's words and actions and the surrounding circumstances an intent to prevent complainant from testifying about the pending charges. *Peo-*

*ple v. Wallace* (1980), 90 Ill. App. 3d 960, 414 N.E.2d 99.

■■ Defendant next maintains that the trial court erroneously found him guilty of home invasion, arguing that there was not testimony that complainant was at home when defendant entered her apartment on August 31 and on March 29. Again, pursuant to *People v. Caballero*, we need not consider this claim; nevertheless, we affirm these convictions.

A person commits home invasion "when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present ***." (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a).) On August 31, 1982, after complainant walked into the kitchen from grocery shopping, defendant grabbed her from behind. This evidence supports the inference that defendant entered complainant's apartment by following her inside after she returned from shopping. Under these circumstances, defendant knew or had reason to know that complainant was present in her apartment when he entered. *People v. Austin* (1984), 123 Ill. App. 3d 788, 463 N.E.2d 444.

On March 29, complainant was leaving her apartment to empty garbage when she heard a woman's voice in the hallway. Complainant opened the door and saw defendant "sliding against the wall." As complainant tried to close the door, defendant forced himself in and knocked her to the floor. The trial court properly found defendant guilty of home invasion on both occasions.

■■ Defendant also contends that the trial court improperly admitted into evidence tape recordings of telephone conversations between complainant and defendant. He argues that the complaint was not authorized to engage in electronic eavesdropping and that the admission of the tapes violated the exclusionary rule. Ill. Rev. Stat. 1981, ch. 38, par. 14—5.

The statute provides for judicial supervision of the use of eavesdropping devices and states in pertinent part:

"The State's Attorney may authorize an application to a circuit judge for, and such judge may grant in conformity with this Article, an order authorizing or approving the use of an eavesdropping device by a law enforcement officer or agency having the responsibility for the investigation of any felony under Illinois law where any one party to a conversation to be monitored, *** has consented to such monitoring." (Ill. Rev. Stat. 1981, ch. 38, par. 108A—1.)

Eavesdropping with one party's consent does not violate the fourth amendment to the United States Constitution (*People v. Hammer*

(1984), 128 Ill. App. 3d 735, 471 N.E.2d 615), and any restrictions placed on such one-party eavesdropping are statutory and not constitutional. *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 407 N.E.2d 1002.

 Complainant consented to the monitoring and recording of her telephone conversations with defendant on the dates in question as evidenced by her affidavit. Pursuant to its statutory authority, the circuit court authorized five law enforcement officers and certain other personnel from the police department and the State's Attorney's office to electronically record conversations between complainant and defendant. There is no statutory requirement that the consenting party be authorized to engage in electronic eavesdropping in the approval order, as defendant maintains. (See *People v. Ellis* (1984), 122 Ill. App. 3d 900, 461 N.E.2d 646.) Rather, the approval order requires only the designation of the consenting party's identity, the other party's identity and the time of authorization. (Ill. Rev. Stat. 1981, ch. 38, par. 108A—5.) The trial court properly admitted the tapes into evidence.

 Defendant finally contends that the concurrent sentences of 18 years are harsh, excessive, and unduly severe. Defendant was 39 years old at the time of sentencing, was employed, and had no history of criminal activity.

The trial court is in a superior position to assess the many factors relevant to sentencing, and a reviewing court may not alter the trial court's sentence absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The record here reveals that the trial court considered appropriate factors in sentencing defendant, including his age, social history and background, as well as the indignity, cruelty and outrageousness of defendant's conduct. We cannot say that the trial court abused its discretion in sentencing defendant. Nor are we persuaded by defendant's argument that the trial court was improperly influenced by the other convictions in deciding the length of sentences for the three rape convictions.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY and RIZZI, JJ., concur.