Jack HYDE, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 28A01–8802–CR–56.

Court of Appeals of Indiana,
First District.

July 14, 1988.

Mary M. Runnells, Robert C. Price, Bloomfield, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Defendant appeals conviction of Intimidation as a class D felony [1] and Resisting Law Enforcement as a class A misdemeanor.[2] We reverse and remand for a new trial.

1. Indiana Code section 35–45–2–1.

2. Indiana Code section 35–44–3–3.

## FACTS

On March 14, 1987, Officer Don Fish of the Jasonville Police Department received a telephone call from Peter Cantu about trouble with Cantu's neighbors, the Hydes. Fish had encountered the Hydes on prior occasions, and Fish knew also that Hyde owned a sawed-off shotgun and that Hyde had previously threatened to kill Fish. When Fish arrived at the Cantu residence, Cantu informed him that while walking his dog, the Hydes' dog "came at him" and Cantu then hit the Hydes' dog with a chain. Brandi Hyde, the appellant's sister, then "came to him and cussed him and had left and then later on Jack [the appellant] had came to the house also cussing." Record at 103.

After receiving this report from Cantu, Fish proceeded across the street to the Hyde residence where Brandi was seated on the porch and the appellant was pacing directly behind her. Fish approached the porch and asked to speak with their mother about the dog problem. Brandi and the appellant both cursed at Fish and told him to get off of their property. Fish attempted to calm them and again asked to discuss the dog problem, but the appellant then stopped pacing and said to Hyde, "I'm going to blow you away." Record at 104. Fish inquired whether that was a "threat or a promise", and the appellant then pointed at Fish and said "Mother fucker I'm going to blow you away." Record at 104. Fish then stated that Hyde was under arrest for intimidation of a police officer and reached for his handcuffs. Hyde turned and ran up the steps into the house. Fish pursued and told Hyde to stop, but by the time Fish reached the door, it was locked. Fish elected not to force his way into the house, but he informed Brandi that Hyde was under arrest and that police would return to arrest him. Fish then returned to the police station, and the following day other officers arrested Hyde.

Hyde was charged on March 18, 1987, with one (1) count of Intimidation and one (1) count of Resisting Law Enforcement. Hyde filed a motion in limine to suppress evidence of his prior convictions and arrests. The motion was granted on July 15, 1987. Hyde's attorney then attempted to supplement the motion in limine to suppress evidence that Hyde possessed a sawed-off shotgun, but that motion was denied. Hyde was found guilty on both counts, and his motion for judgment on the evidence was denied. Following a hearing on August 13, 1987, Hyde was sentenced to four (4) years. Hyde filed a Motion to Correct Errors on October 7, 1987, and the court ruled on November 16, 1987, that lack of remorse had improperly been considered as an aggravating factor in sentencing. However, the court did not alter the sentence, and Hyde subsequently filed this appeal.

## ISSUE

The appellant presents three (3) issues for our review, but one (1) is dispositive:

Did the trial court properly conclude that evidence that Hyde owned a sawed-off shotgun was relevant and therefore admissible?

## DISCUSSION AND DECISION

■ Hyde claims that the trial court erred in admitting evidence that he possessed a sawed-off shotgun. We note first that Hyde has preserved this issue for our review by making a motion in limine and objecting when the evidence was first introduced at trial. The state contends that the objected-to testimony was merely cumulative, and therefore harmless, because Hyde failed to object when the same evidence was admitted during the state's rebuttal. We disagree. When an objection to certain evidence is distinctly made and overruled it need not be repeated to the same class of evidence when subsequently received. 28 I.L.E. *Trial* § 63 (1960); *State v. Monniger* (1962), 243 Ind. 174, 177, 182 N.E.2d 426, 427. Hyde's motion in limine and objection during the state's case-in-chief properly preserved the issue of relevance for our review.

■ Specifically, Hyde argues that his ownership of a gun was not relevant to any element of the intimidation charge. The state, however, argues that the shotgun

evidence was properly admitted because it was relevant to the issue of Hyde's intent that Fish be placed in fear. We agree with the appellant. Indiana Code section 35–45–2–1 provides:

"(a) A person who communicates a threat to another person, with the intent that:

(1) The other person engage in conduct against his will; or

(2) The other person be placed in fear of retaliation for a prior lawful act;

commits intimidation, a class A misdemeanor.

(b) However, the offense is a:

(1) class D felony if:

(A) The threat is to commit a forcible felony; or

(B) The person to whom the threat is communicated:

(i) Is a law enforcement officer;

(ii) Is a judge or bailiff of any court; or

(iii) Is a witness (or the spouse or child of a witness) in any pending criminal proceeding against the person making the threat; and

(2) class C felony if, while committing it, the person draws or uses a deadly weapon.

(c) 'Threat' means an expression, by words or action, of an intention to:

(1) Unlawfully injure the person threatened or another person, or damage property;

(2) Unlawfully subject a person to physical confinement or restraint;

(3) Commit a crime;

(4) Unlawfully withhold official action, or cause such withholding;

(5) Unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees or expenses;

(6) Expose the person threatened to hatred, contempt, disgrace, or ridicule; or

(7) Falsely harm the credit or business reputation of the person threatened."

Thus, the elements of the offense are: (1) communicating a threat, (2) to another person, (3) with the intent that the other person either engage in conduct against his will or be placed in fear of retaliation for a prior lawful act.

Relevant evidence is that which renders a desired inference more probable than it would be without the evidence. *Connell v. State* (1984), Ind., 470 N.E.2d 701, 705. Relevance also has been defined as the logical tendency to prove a material fact. *Bolen v. State* (1982), Ind.App., 430 N.E.2d 398, 400. Rulings of a trial court on relevancy of evidence generally are given wide latitude on appeal, *Bolen*, at 401, however, we must disagree with the trial court's finding in this case. We cannot say that Hyde's ownership of a gun made it more probable that, on the day in question, he communicated "an expression, by words or action, of an intention to . . . [u]nlawfully injure" Officer Fish. I.C. § 35–45–2–1(c). There is no evidence in the record that Hyde ever told Fish that he owned a gun, nor is there any evidence that Hyde knew that Fish had been told by others that Hyde had a gun. Furthermore, the evidence conflicts as to whether Hyde actually said "I'm going to blow you away". Assuming that phrase would constitute a threat within the meaning of the intimidation statute, the fact that Hyde owned a gun in no way proves that he uttered those words. Whether Hyde owned a shotgun simply has no bearing on whether he communicated a threat to Office Fish on the day in question.

■ The state argues also that the shotgun evidence was relevant to the issue of Hyde's intent to place Fish in fear of retaliation for a prior lawful act. Again, we must disagree. Hyde did not know that Fish knew Hyde owned a shotgun. If Hyde harbored an intent to place Fish in fear, the only "fear-inspiring tools" at his disposal were words, gestures, and the objects within his reach. The issue of the gun's existence would have been relevant to prove that Fish actually was placed in fear of retaliation, but the victim's state of mind is not an element of the crime of

intimidation. The statute requires only that the accused *intend* to inspire fear, not that he actually do so. Whether Hyde owned a gun does not logically tend to prove that he intended by his words or actions to place Officer Fish in fear of retaliation. We thus conclude that the challenged evidence was not relevant to the charges against Hyde and should have been excluded on that basis.

■ The erroneous admission of evidence is harmless error where a guilty finding is supported by substantial independent evidence of guilt. *Bates v. State* (1986), Ind., 495 N.E.2d 176, 178. Furthermore, this court will reverse a judgment in such a case only where the evidentiary error has caused prejudice to the defendant. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, 957, *cert. denied* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556. The record in this case does not contain substantial independent evidence of guilt. The only evidence that Hyde threatened Fish came from Fish's own testimony. Hyde and his sister denied that threats were made, and a neighbor stated that she could not hear what Hyde said. The independent evidence of guilt was far from overwhelming. We believe the admission of the shotgun testimony did prejudice Hyde in the eyes of the jury. Because Hyde suffered prejudice as a result of the admission of irrelevant evidence, we reverse and remand for a new trial.

NEAL, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

Deborah Dennis, a Humane Society employee, over objection as to relevance, testified as follows:

"Q. Has Jack Hyde told you that he has a weapon?
A. Yes.
Q. Have you seen that weapon?
A. Yes.
Q. What kind of a weapon does he have?
A. It's a sawed-off shotgun.

Q. Do you know the purpose for which Jack Hyde obtained that weapon?
KAREN R. STRUEH: Objection. It calls for conjecture and speculation.
THE COURT: Sustained.
Q. Did Jack Hyde tell you why he acquired that weapon?
A. Yes, he did.
Q. And what was it ... what was the purpose that he told you?
A. He told me that he had bought it and he was going to wait until Officer Fish was on duty ... midnight duty or whatever it is and he was in by himself ... then he was going to walk in blow him away and walk out." Record at 96.

Later Officer Fish himself testified, *without objection,* as follows:

"Q. Have you previously been informed of anything that would cause you to be in fear of your safety if you went into that house?
A. Yes, I had.
Q. Please explain that.
A. In the middle of February, Debbie Dennis had advised me that Jack Hyde had a sawed-off shotgun and that he had threatened to blow me away or kill me ... and that he was going to come while I was on 3rd shift and kill me while I was in the office. She also told me that the gun was kept at the house.
Q. Is that why you didn't ... is that one of the reasons that you didn't break the door down and go in and get him?
A. That was the primary reason." Record at 106.

Even if we consider the earlier objection to Ms. Dennis's testimony to be of a continuing nature so as to apply to the testimony of Officer Fish, it would seem that the latter testimony was certainly relevant to why Officer Fish did not consummate the arrest after Hyde fled into the house and locked the door.

In any event, I respectfully disagree with the position of the majority that the existence, presence or absence of a shotgun is wholly irrelevant to the charge of Intimidation.

The "threat," here oral, must be communicated. The "threat" must also be made with an intent to cause conduct by the other person or place that other person in fear. Whether the statement is truly threatening or not depends not only upon the intent of the utterer but upon its perception by the hearer.

Even if it were otherwise and our focus were restricted solely to the defendant's subjective state of mind, that state of mind must be viewed or determined in the context of the circumstances. It is not only the naked statement or the words used which reflect that intent but the circumstances under which those words were uttered and communicated.

For this reason I am unable to agree with the grounds for reversal and for the granting of a new trial.

Establishment of the required intent to cause an individual to engage in conduct depends upon the facts and circumstances surrounding the offense. *People v. McKendrick* (1985) 138 Ill.App.3d 1018, 93 Ill.Dec. 462, 486 N.E.2d 1297.

Those facts and circumstances are also relevant to whether the communication may be objectively viewed as a true threat. *See State v. Abu–Isba* (1984) 235 Kan. 851, 685 P.2d 856.

In *Long v. State* (1986) 3d Dist. Ind.App., 492 N.E.2d 700, 702, our Third District held that the intent requisite for an intimidation conviction "may be inferred from the surrounding circumstances." Certainly, if this be so, Hyde's ownership and access to a weapon gives dimension and context to the threat made and to the intent with which he made that threat.

Our case is strikingly similar to *Bolen v. State* (1982) 3d Dist. Ind.App., 430 N.E.2d 398. It is not therefore inappropriate to quote the entire pertinent holding from that case:

"The testimony objected to discloses that on June 27, 1980 Bolen called Yoder 'a little Amish son-of-a-bitch' and that Bolen 'intended to get him.' Record at 294. Hammer also testified that on June 28, 1980 Bolen talked in general terms about Yoder being the cause of all his problems. Bolen then took Hammer to the back of his van and showed him a clip from an automatic weapon and stated, 'I'm going to kill him,' referring to Yoder. Record at 297. Although these statements may not have necessarily constituted a crime inasmuch as Yoder was not present at the time, they show that Bolen had talked of killing Yoder shortly before he actually threatened Yoder. A material issue in this case was whether Bolen actually told Yoder that he would kill him. The evidence is therefore relevant." 430 N.E.2d at 401.

In our case there is no dispute whether the words which constituted the threat were uttered. Nevertheless, the circumstances surrounding that statement were material and relevant to the issue of whether the statement constituted a threat and to Hyde's intent.

Whether Fish knew of the existence of the weapon may have been relevant to his perception of the threat. However, even if the majority is correct in stating that Fish's knowledge of the weapon is irrelevant, the existence of the sawed-off shotgun and Hyde's ownership and access to it was relevant to his intent. Hyde's statement to Dennis concerning the shotgun and its prospective use tended to demonstrate that he was serious about "blowing Fish away."

Although the Indiana statutory definition of "threat" does not contain express language concerning the perception of the person to whom the threat is communicated, Federal case law is of some assistance. The Federal statute, 18 U.S.C. § 875(c), forbids communication of a threat in interstate commerce. The communication must "have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Bozeman* (1974) 5th Cir., 495 F.2d 508, 510,

*cert. denied* 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696.

The Indiana intimidation offense, unlike the Federal violation above cited, requires that the communication be made to the intended victim. Accordingly, it would appear that the prospective victim's perception of the communication is germane. That perception might well be materially affected by knowledge or reasonable apprehension that the originator of the communication had the ability to carry out the threat.

To be sure inability to carry out a threat does not militate against a conviction for transmitting a communication containing a threat. *See United States v. Cooper* (1975) 6th Cir., 523 F.2d 8. This legal premise, however, does not mean that evidence of ability to carry out the threat is inadmissible. *United States v. Goodoak* (1988) 1st Cir., 836 F.2d 708, involved a conviction of attempted extortion. Unlike a consummated extortion, it is not necessary to prove that the threat generated fear in the victim. The defendant, therefore, argued that evidence of actual fear in the victim was irrelevant. The court disagreed stating:

> "In deciding whether the defendant's words and acts amounted to an attempt to induce fear, the jury is surely entitled to know whether those words and acts did in fact induce fear. Evidence that the defendant's conduct frightened the victim makes it more likely that the defendant was in fact attempting to frighten the victim. Conversely, evidence that the victim was not frightened makes it less likely that the defendant made such an attempt." 836 F.2d at 712.

In a different Federal context, the court in *United States v. Mitchell* (1987) 9th Cir., 812 F.2d 1250, considered the statute which prohibits knowingly and willfully making a threat against the President. Quite obviously, a conviction does not depend upon whether the threat has been communicated directly or indirectly to the President. It requires only that the statement be made in a context or under circumstances that a reasonable person would interpret it as a serious expression of intention. The Court appropriately held, as should we, that whether the statement constituted a punishable threat must be determined in light of the entire factual context of the statement and that surrounding events and the reaction of the listeners may be considered. This holding was enunciated in light of a corollary holding that it is of no moment that the defendant is incapable of carrying out the threat because the threat itself is the crime. The *Mitchell* case demonstrates that whether there is or is not a true threat depends upon all the circumstances and would include whether defendant has the present ability to carry out the threat even though inability to do so in and of itself does not preclude a conviction. Quite clearly under this analysis, evidence of an ability to carry out the threat is admissible. *United States v. Hoffman* (1986) 7th Cir., 806 F.2d 703, *cert. denied,* —— U.S. ——, 107 S.Ct. 1627, 95 L.Ed.2d 201.

Our statute, with reference to the intent required of the defendant, is not dissimilar from that considered in *People v. Hopkins* (1983) 149 Cal.App.3d 36, 196 Cal.Rptr. 609. The court there held that the apparent ability of the defendant to carry out the threat was an element of the crime, although it was not necessary for the State to prove that it reasonably appeared that defendant would, in fact, carry out the threat.

The Montana intimidation statute is virtually identical to ours. In *State v. Lance* (1986) Mont., 721 P.2d 1258, the unanimous Montana Supreme Court observed that the statute prohibits the communication of a threat without any requirement of an overt act. With reference to the impact of the threat upon the hearer, the Court said:

> "We find that implicit in the word 'threat', as used in the intimidation statute, is a requirement that it be communicated under circumstances which reasonably tend to produce a fear that the threat will be carried out." 721 P.2d at 1266.

> "The language of § 45–5–203 does not use the word 'victim'; rather, the word 'another' is used. We believe that it is within the language and intent of the statute that the person who receives the

threat can be different from the person who is sought to be compelled by the threat. Otherwise, for example, an individual could contact the news media threatening to take the life of a hostage if the Governor does not meet his demands, and he could not be convicted under this statute. But it is this very situation which the statute is aimed at outlawing." 721 P.2d at 1269.

Under such construction it therefore is apparent that the communication to Dennis concerning the weapon and the intent to harm Fish was not only admissible evidence as to Hyde's intent but was itself a separate and prohibited threat. *But see Bolen v. State, supra,* 430 N.E.2d 398, as hereinbefore quoted.

Whether the statement or communication is a threat or is innocuous or a jest depends upon the total circumstances and upon the perception of the hearer. *See State v. Frustino* (1984) 142 Ariz. 288, 689 P.2d 547, 552:

"A statement which appears nonthreatening on its face, such as, 'I'll send someone over to collect the money' may be threatening only in light of the creditor's specific prior uses of extortionate means of collection or his reputation regarding his collection practices."

To the same effect is *State v. Begbie* (1987) Minn.App., 415 N.W.2d 103 (that defendant planned murder of victim six months prior to communicated threat was relevant to show that the threat was not merely an expression of transitory anger).

Not only must a threat be uttered, it must be communicated. The perception of the victim, or other hearer is therefore important. As stated in *United States v. Baish* (1983) D.C.App., 460 A.2d 38, 42:

"We find implicit in our threats statutes the same notion: to be subject to criminal prosecution, an individual must do more than utter a threat; the evidence must show that the threatening message was conveyed to someone—either to the object of the threat or to a third party. An uncommunicated threat, by definition, cannot threaten. A fortiori, a person making threats does not commit a crime until the threat is heard by one other than the speaker.

\*      \*      \*      \*      \*      \*

To establish a prima facie case, the government must prove, first, that the defendant uttered words *to another,* as well as that these words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer, and that the defendant intended to utter these words as a threat." (Original emphasis.)

In *State v. Mapula* (1986) 80 Or.App. 146, 720 P.2d 1336, the Court considered a factual situation very similar to that before us and succinctly summarized the holding which I think to be appropriate in this case:

"The determination of whether a threat is genuine and poses an objective risk must necessarily be made on the facts as of the time of the threat. A failure [or inability] by the defendant to act on the threat may suggest that it was not genuine, but the failure does not compel that conclusion. There is evidence that defendant had previously damaged the victim's property, that defendant had a gun and that he said, 'I've got a gun and I'm going to kill you.' The trial court could infer from that evidence that the threat was genuine and that it imposed an objective risk of breach of the peace. That is sufficient to support the conviction." 720 P.2d at 1336–1337.

Because the majority opinion requires a new trial as to all issues and charges, it would serve no useful purpose for me to express a view concerning the other issues presented by appellant. I therefore restrict my dissent to the issue upon which the majority decided the case.