THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MACK T. COLE, Defendant-Appellant.
Third District   No. 77-204

Opinion filed February 24, 1978.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial, defendant, Mack Cole, was found guilty of intimidation in violation of section 12—6(a)(1) of the Criminal Code of

1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—6(a)(1)). The circuit court of Peoria County sentenced the defendant to imprisonment for a term of from one to three years.

The sole issue on appeal was whether the evidence at trial proved defendant guilty beyond a reasonable doubt. We affirm.

Throughout the pretrial proceedings, defendant was represented by private counsel. Shortly before the trial commenced, defendant requested that he be allowed to represent himself. After lengthy and proper admonitions as to the hazards presented by representing oneself, the judge allowed the defendant's request. The trial court also designated defendant's attorney of record to act for the limited purpose of assisting and advising the defendant and to be available should the defendant be unable to proceed with his own defense.

The incident in question involved a phone call defendant allegedly made to his former wife, Gertha Cole, sometime in the early morning hours of September 9, 1976. The State presented only the testimony of Gertha Cole and her son, Matthew Burton. Gertha Cole is the former wife of the defendant.

Gertha Cole testified that at approximately 12:55 a.m. on September 9, 1976, her son answered a phone call. When she heard her son say something about money, she took the phone receiver away from him. She recognized defendant's voice and testified that defendant told her that unless she gave him $2,500, he would blow her brains out. At the time of the alleged phone call, it appears that a warrant for defendant's arrest for disorderly conduct was outstanding. The warrant was based on a complaint filed by Gertha Cole and provided for a $2,500 bond. On direct examination of Gertha Cole during the State's case in chief, the witness testified without objection by defendant that she had received many other phone calls from defendant. When called as a defense witness, Gertha Cole again referred to a number of phone calls received from defendant, again without objection by defendant. It was during direct examination of Gertha Cole as a defense witness that defendant withdrew as his own counsel and the attorney who had been assisting him began conducting the defense. When presented with a copy of a police report which differed from her testimony in court, Gertha Cole responded that she was very upset as a result of the call and could not remember what she had told police. In the police report she told the officer that she answered the phone in the living room and when she recognized defendant's voice, instructed her son to pick up the bedroom extension. Her son's statement to police was the same. However in her testimony at trial, Gertha Cole testified that her son answered the phone and she took the receiver away from him, a story corroborated by her son's testimony at trial. The police report was admitted into evidence. Mrs. Cole also testified to having

obtained a medical prescription for tranquilizers to calm a nervous condition which she claims was induced as a result of numerous disturbing phone calls she received from defendant. The testimony of Matthew Burton corroborated his mother's in-court testimony. The statements made by Burton to police on the evening of the phone call were substantially the same as those given by his mother to police at the same time, but differed in certain material aspects from his in court testimony.

Defendant's residence at the time of the incident was a community center house for parolees located in Peoria and known as Renaissance House. Operations at the center are supervised by employees of the Department of Corrections. Two such employees were called as defense witnesses. Charles Bartlett was a resident counselor at the center and was on duty from 4 p.m. until midnight on September 8. He testified that a record called a day sheet is kept on each resident at the center. The day sheet for the week of September 8 revealed that Mack Cole arrived at the center at 11:40 p.m. on September 8, and then retired to his room for a shower. Bartlett testified he was positioned between Cole's room in one hallway and the only available pay phone in a second hallway. It appears the only access from defendant's room to the phone is past the place where Bartlett was stationed. Although Bartlett could not state unequivocally defendant did not use the phone, to his knowledge Mack Cole did not make any calls from 11:40 to midnight on September 8, when Bartlett was relieved by William Alewel. Alewel's position between defendant's room and the phone was the same as Bartlett's. On direct examination, Alewel was certain that Mack Cole had not used the phone at any time between midnight on September 8 and 1:10 a.m. on September 9, which is the time he received a phone call from Gertha Cole complaining about defendant having made a phone call a short time previously. However, on cross-examination Alewel was not so certain as to defendant's whereabouts at all times from midnight September 8 to 1:10 a.m. on September 9. During cross-examination of Alewel the following transpired:

"State's Attorney: Mr. Alewel, your testimony is from the time you came on duty until approximately 1:10 you really don't think Mr. Cole made the call?

Witness: No, that's not true. That's not what I testified to. I said that between one on I know for sure that he could not have possibly made a phone call in that time period. Between 12 and 1 o'clock, or, you know, if you want to use 1 o'clock or 2, 12:50, if he want to use that tentatively, I can't say I had him under observation every minute. But I did have contact with him four or five times throughout that time period and neither time I had contact with

him was he in what I would call the left hallway (where the phone is)."

Kenneth Mahon, a deputy sheriff, testified on behalf of defendant. According to Mahon, a call was received at 12:55 a.m. on September 9 from Gertha Cole and Mahon responded. The police log recorded the call as 1:12 a.m. Upon arriving at the Gertha Cole residence, Mahon found Mrs. Cole in a very, very upset condition. Mahon verified the accuracy of the police report and testified that both Gertha Cole and Matthew Burton told him that Mrs. Cole first answered the phone and when she recognized the defendant's voice, she told her son to pick up an extension.

The defendant testified on his own behalf and denied having called Gertha Cole at any time on the evening of September 8 or in the early morning hours of September 9. Upon arriving home on September 8, defendant washed up and went to the television room at about 11:55 p.m. to watch a television show. He watched the show until the call from Mrs. Cole came. Defendant claimed he last spoke to the complainant on August 10 during a long distance phone call from Chicago.

It has often been held that it is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis*, 63 Ill. 2d 296, 347 N.E.2d 733.) Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact (*People v. Clark*, 30 Ill. 2d 216, 195 N.E.2d 631), unless the evidence is so unsatisfactory as to leave a reasonable doubt of the defendant's guilt. (*People v. Morehead*, 45 Ill. 2d 326, 259 N.E.2d 8.) It is only after careful consideration of the evidence revealed by an examination of the record that we believe sufficient evidence was presented from which the jury was entitled to find defendant guilty beyond a reasonable doubt.

Focusing first upon the State's chief witness, the jury had before it the police report and the testimony of Mrs. Cole, and furthermore, was made aware of the inconsistencies between her testimony and the report. While Gertha Cole's testimony was somewhat inconsistent with her prior statement to police, the jury was offered a plausible explanation for the differences between the two. The witness claimed she was extremely upset on the night she received the phone call, a fact corroborated by deputy Mahon. The basis for the witness's nervous condition and confusion was further explained by her testimony of numerous previous phone calls by defendant. Testimony to those calls was admitted on several occasions without objection by defendant and the jury was permitted to draw all reasonable inferences from that evidence, including an explanation for the witness's confusion and nervous condition. Both to police and throughout trial, Mrs. Cole was steadfast in her position that

defendant called her and demanded $2,500 or he would blow her brains out.

Matthew Burton's courtroom testimony corroborated the existence of the phone call and the fact that defendant was seeking $2,500 from his mother. While this witness' credibility was suspect because his testimony was not entirely consistent with his statement given to police, his credibility and the weight to be given his testimony were peculiarly within the province of the jury.

As to the testimony by the employees of the Department of Corrections, Bartlett could not recall seeing defendant use the pay phone, but was uncertain as to whether he paid close enough attention to movement in the building to observe whether or not defendant had made a phone call. While Alewel did testify on direct examination that defendant did not make a phone call between 1 and 1:10, his testimony on cross-examination, as stated earlier, reveals that he could not vouch for defendant's whereabouts at all times between midnight and 1:10 a.m. Neither Bartlett nor Alewel were in the presence of the phone which defendant would have had to use to make the intimidating phone call and any observations of defendant would have had to be through an open door. Hence the jury would be permitted to infer that it was entirely possible for defendant to make the intimidating phone call without being seen by either Bartlett or Alewel. As to defendant's testimony, while defendant denied making the phone call his credibility was impaired by his own testimony to having a prior conviction for manslaughter. Defendant's testimony also included references to several prior arrests for burglary and disorderly conduct. After careful consideration of all the evidence presented at trial, we believe sufficient evidence was presented from which the jury could find defendant guilty beyond a reasonable doubt. Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

BARRY, P. J., and SCOTT, J., concur.