THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ERNESTO GARCIA, Defendant-Appellant.

First District (3rd Division)    No. 79-2025

Opinion filed December 30, 1981.

780

George M. Zuganelis, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Mark A. Graf, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial the defendant, Ernesto Garcia, was convicted of three counts of aggravated battery and one count of armed violence. The defendant was found not guilty of attempt murder. The trial court merged the three counts of aggravated battery into the armed violence count and entered judgment on this latter count and sentenced the defendant to six years imprisonment.

On appeal the defendant contends (1) that he was not proved guilty of armed violence beyond a reasonable doubt since the State did not prove beyond a reasonable doubt that he did not act in self-defense; (2) that the trial court erroneously denied his motion to dismiss the charge of armed violence; (3) that the trial court improperly limited cross-examination; (4) that he was denied a fair trial because the trial court limited his closing argument; and (5) that certain evidence was improperly excluded.

Ramon Rios, age 20, testified that on November 7, 1978, he lived with his family at 1845 North Sawyer in Chicago. At approximately 3 p.m., he drove Ruban Granica, a friend from high school, to the apartment of Ruban's estranged wife, Ebby. Ramon went to the door and spoke to Ebby's son. Thereafter, Ebby and her two children entered Ramon's car, and Ramon drove them to the home of Ebby's parents which was located on the same block as Ramon's home.

The following evening at approximately 7 p.m., Ramon was at the home of his brother-in-law who also lived on the 1800 block of North Sawyer. Ramon's girlfriend (now his wife), Theresa Reibeling, joined him. Subsequently, the couple left the house and began walking home. Ramon observed the defendant, Ebby, and a third man approach them. Ramon and Theresa stopped two or three steps south of a gangway. After asking "Are you Ramon?" the defendant pulled a revolver from his waistband.

Ramon pushed Theresa to the side and ran east into the gangway. Ramon heard one shot and brushed against both sides of the gangway. He heard a second shot which hit him in the right upper shoulder and exited through his chest. Ramon fell and the defendant ran. The wound resulted in scarring and the partial loss of the use of Ramon's right arm. Ramon exhibited the entrance and exit scars to the jury.

Ramon denied gesturing as if he were reaching for a gun before the defendant shot him. He stated that he did not own a gun and was not a

gang member. Ramon stated that he knew members of the Imperial Gangsters gang and that he had travelled with them. He explained that he meant that he had accompanied gang members on grammar and high school trips. On cross-examination, Ramon agreed that "travel" also meant "to get high with someone and get in trouble with someone."

Theresa Reibeling Rios corroborated her husband's testimony concerning his encounter with the defendant.

Officer John Carney of the Chicago Police Department testified that he wrote in his report concerning the shooting that Ramon and Theresa were sitting in front of his brother-in-law's house when approached by the defendant.

Evelyn Garnica, also known as Ebby, testified that on November 7, 1978, Ramon and her husband came to her apartment and forced her and the children into Ramon's car. Ramon drove them to Ebby's mother's house. Ruban and Ebby argued, and Ruban hit her. Subsequently, upon Ebby's request, Ruban drove her and the children to a doctor's office. They argued and when Ebby attempted to get out of the car, Ruban slapped her and took her jewelry. Ebby informed the defendant, her boyfriend, of these events.

The defendant testified that when Ebby told him what Ramon and Ruban did to her, he bought a gun. The following evening the defendant, Ebby and Blas Manfreddy went to Ramon's home to inquire of Ruban's whereabouts. The defendant observed Ramon and Theresa sitting on a neighbor's porch. The defendant approached Ramon and asked if Ramon had gone to the defendant's home. Ramon responded, "yes, so what" and pulled down the zipper on his sweater. Ramon put his hand inside the sweater. The defendant believed that Ramon was reaching for a gun. The defendant pulled out his gun and shot Ramon. Ramon then ran. The defendant also ran and accidentally pulled the trigger on his gun a second time. The defendant subsequently turned himself in to the police.

The defendant's version of the shooting was corroborated by Ebby and Manfreddy.

The parties stipulated that if a Dr. Baquero was called as a witness, he would testify that Ramon sustained a gunshot wound in the right shoulder with an entrance in the uppermost aspect of the right arm posteriorly on the deltoid area and the wound exit was localized in the anterior chest.

## I

The defendant first argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. The issue of self-defense is a question of fact to be resolved by the trier of fact. This factual finding will not be disturbed on review unless it is so unreasonable, im-

probable or unsatisfactory as to raise a reasonable doubt of guilt. *People v. Perez* (1981), 100 Ill. App. 3d 901, 427 N.E.2d 229; *People v. Chapman* (1977), 49 Ill. App. 3d 553, 364 N.E.2d 577.

The defendant contends that the fact that the bullet entered Ramon's body under the right arm pit corroborates his claim that Ramon turned his right shoulder toward the defendant and appeared to reach for a gun. However, the record does not indicate that the bullet hit Ramon under the right arm pit. It was stipulated that Dr. Baquero would testify that the bullet entered the posterior of the right arm. We cannot say that this testimony is inconsistent with Ramon's claim that the bullet hit him as he ran down the gangway. Furthermore, the jury had the opportunity to examine the precise locations of the scars and was in the best position to determine whether the location of the scars was consistent with Ramon's testimony.

The defendant also argues that Ramon and Theresa's testimony was impeached by the police report which indicated that they were on the steps of Ramon's brother-in-law's house when the incident occurred. He also points out a few minor contradictions in their testimony. However, slight testimonial discrepancies do not destroy the credibility of a witness but go to the weight of that testimony. *People v. Schultz* (1981), 93 Ill. App. 3d 1071, 418 N.E.2d 6.

The defendant additionally contends that Ramon lied about his association with the Imperial Gangsters. Ramon stated that he travelled with gang members on school trips. On cross-examination Ramon agreed that travel also meant "to get high with someone and get in trouble with someone." Although defendant contends this testimony shows that Ramon "deliberately lied," one could reasonably conclude that Ramon simply agreed that travel has more than one meaning.

■■ The jury heard conflicting testimony concerning the circumstances surrounding the shooting. Ramon and Theresa testified that the defendant produced a revolver and shot Ramon as Ramon fled down a gangway. The defendant, Ebby and Manfreddy testified that the defendant shot Ramon after Ramon gestured as if he were reaching for a gun. After hearing the conflicting testimony and evaluating the parties' credibility, the jury rejected the defendant's claim of self-defense. We cannot say that such a conclusion was so unreasonable as to raise a reasonable doubt of guilt.

## II

The defendant next contends that the trial court erroneously denied his motion to dismiss the charge of armed violence. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law. Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

The defendant contends that the armed violence charge, which was based on the felony of aggravated battery, constituted a double enhancement of the penalty for battery. The defendant relies on *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, in which the defendant was charged with armed violence in that while armed with a dangerous weapon, he committed an aggravated battery in violation of section 12—4(b)(1) of the Criminal Code of 1961. That section states that a person commits the felony of aggravated battery if he uses a deadly weapon while committing a battery. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1).) In *Haron*, our supreme court noted that pursuant to section 12—4(b)(1), the offense of battery, a misdemeanor, was enhanced to the offense of aggravated battery, a felony, because of the use of a deadly weapon. The court refused to apply the armed violence statute because:

> "Our review of the language of the statute and the authorities leads us to conclude that the General Assembly did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence. In our opinion the requirement of section 33A—2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon." 85 Ill. 2d 261, 278.

■■ The instant case is clearly distinguishable from *Haron*. Here the armed violence charge was based on aggravated battery as defined in section 12—4(a) of the Criminal Code of 1961, which states that a person commits the felony of aggravated battery if, in the commission of a battery, he intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a).) Such an act is always a felony regardless of whether the defendant uses a deadly weapon. Thus, the armed violence charge in the instant case was based on the commission of a felony, and it did not constitute a double enhancement of the penalty for a battery. Therefore, the defendant's motion to dismiss that charge was properly denied. See *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955.

## III

The defendant next contends that the trial court improperly limited cross-examination on several occasions. The scope of cross-examination rests within the sound discretion of the trial judge whose restrictions will not be reversed except in a case of a clear abuse of discretion. *People v. Hiller* (1980), 92 Ill. App. 3d 322, 415 N.E.2d 1202.

■■ The defendant first asserts that the trial court improperly prevented Ramon from stating the contents of a conversation he had with Ruban

prior to trial. We believe that the court's ruling was proper since the questions were designed to elicit hearsay testimony.

The defendant's next objection concerns Ramon's testimony that as he ran down the gangway, his right shoulder touched one house and his left shoulder touched the other house. Defense counsel asked Ramon, "Did you tell that to my representative this afternoon when we interviewed you?" The State's objection to this question was sustained by the trial court.

■■ Defendant contends that he was entitled to impeach Ramon by showing the omission of this matter from his earlier statement. A witness' failure to state a particular fact under circumstances rendering it incumbent upon him to, or likely that he would state such fact, if true, may be shown to discredit his testimony as to such fact. (*People v. Svoboda* (1979), 75 Ill. App. 3d 487, 394 N.E.2d 72.) We do not believe that Ramon's failure to describe the manner in which he ran down the gangway in an interview with defendant's representative impeached his credibility. It is unlikely that Ramon would have mentioned this detail unless the representative specifically asked him about it. Thus, no prejudicial error occurred in this regard.

■■ Defendant also objects to the following limitation. On cross-examination, Ramon gave two different answers to a question. On redirect Ramon clarified his answer, and on recross, Ramon stated that he had not understood defense counsel's question. Counsel then asked, "What didn't you understand about the question?" "Is there a particular word you didn't understand?" The State objected to these questions, and the trial court sustained the objections. In view of the slight probative value provided by the information sought by defense counsel, we cannot say that the court's ruling was an abuse of discretion.

■■ Finally, the defendant contends that the trial court improperly limited his attempt to show Theresa's bias. The trial court sustained objections to the following questions: "Isn't it true that because of what you think Ernie did, you hate him?" and "You would like to see Ernie punished wouldn't you?" The reason for the court's ruling was that the questions were argumentative, and we believe that this conclusion was proper.

## IV

The defendant also argues that he was denied a fair trial because the trial court limited his closing argument. In his argument defense counsel attempted to define reasonable doubt. The trial court told him that "The Court will instruct the jury on the law. Confine yourself to the evidence." ■ Because there is no better definition of reasonable doubt than the words themselves, the concept of reasonable doubt needs no explanation.

(*People v. Jenkins* (1980), 89 Ill. App. 3d 395, 411 N.E.2d 1047.) It is improper for an attorney to attempt to define this concept. (*People v. Amos* (1977), 46 Ill. App. 3d 899, 361 N.E.2d 861.) Thus, the trial court properly directed counsel to refrain from such an attempt.

## V

The defendant's final argument is that the trial court erroneously prevented him from testifying that Ruban had previously threatened him. Although the court did sustain an objection to a question concerning the threat, defendant was later allowed to testify that he carried a gun because Ruban had threatened him. Thus, there is no factual basis for this argument.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and WHITE, J., concur.