THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
COLETTE TENNIN, Defendant-Appellant.

Second District   No. 2—86—0419

Opinion filed November 10, 1987.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of Elgin, and Robert J. Biderman and Gwendolyn W. Klingler, both of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Colette Tennin, was charged in three separate informations filed in the circuit court of Lake County with three counts of exploitation of a child, two counts of pandering, one count of juvenile pimping, three counts of intimidation and one count of unlawful restraint. (Ill. Rev. Stat. 1985, ch. 38, pars. 11—19.2(A)(1), (A)(2), (A)(3), 11—16(a)(1), (a)(2), 11—19.1, 12—6(a)(1), (a)(2), 10—3.) The intimidation counts charged that the defendant threatened the complainant with physical harm and physical confinement with the intent to cause her to perform an act of prostitution. A jury found her guilty of two counts of intimidation and one count of unlawful restraint, and the court sentenced her to two concurrent three-year terms of imprisonment.

She contends the court erred: (1) in excluding evidence of the complainant's prior sexual activities; (2) in admitting evidence of a statement about the instant offenses made by the complainant to her mother; and (3) in allowing in evidence at the sentencing hearing a victim-impact statement prepared by the complainant's stepfather.

The complainant, P.S., was 12 years old in October 1985. On October 24, walking home from a gas station where she had stopped to buy some candy after school, she was forced into a parked car by three women whom she knew: Dedra Johnson, the 17-year-old defend-

ant, Colette Tennin, and defendant's niece, 14-year-old Wanda Welch. P.S. was driven to a building on 10th Street in North Chicago and forced into an upstairs apartment where Dedra and her three children lived. P.S. remembered talking with North Chicago detective VanDien during an investigation of the subsequent events in the apartment, but she did not remember telling him that she voluntarily entered the car and the apartment. VanDien testified P.S. first stated she was forced into the car and the apartment, and that she later stated she entered both voluntarily.

Present in the apartment when P.S. and the three women entered were two more of the defendant's nieces, 16-year-old Joyce Welch and 13-year-old Marlene Welch, and Jeanette Leonard and Dedra's three children. P.S. testified that the defendant, Wanda, and Jeanette slapped and hit and kicked her in a back room, apparently in retribution for some remarks P.S. had made. P.S. testified the defendant threatened to kill her if she told anybody what happened. P.S. then went into the bathroom to wash her face, and the defendant, Wanda and Jeanette came into the bathroom. Wanda held a potato peeler to P.S.'s face while the defendant told P.S. to pull her own pants down and put her finger in her vagina. P.S. complied, and the defendant then told P.S. to lick that finger and lick her (the defendant's) foot. The defendant also made P.S. put shaving cream in her own mouth.

After they all left the bathroom, the defendant spat in P.S.'s face and told her not to tell about the events which just occurred or she would be looking for her. The defendant then looked out the window, called a man upstairs, and told P.S. that she was going to act as a prostitute. P.S. disrobed at the defendant's command. The man came upstairs, gave the defendant $50, and P.S. testified, "the man then started pumping me." Afterward, the defendant called another man upstairs, and he had sex with P.S. for free. Jeanette then took P.S. to Lamont Coleman's aunt's house. From there, P.S. went to Mary Peets' house and called her mother, who came to get her.

P.S.'s mother testified that on October 24 P.S. called her from Mary Peets' house at 11 p.m. P.S.'s mother called the police and went with them to Mary Peets' house, where P.S. told her mother what happened.

North Chicago detective John Phelps testified that he interviewed the defendant about 11 p.m. on November 15, 1985, at the North Chicago police station. The defendant told Phelps that P.S. arrived at Dedra's apartment at noon on October 24. Dedra was mad at P.S. because P.S. had been talking about her. Dedra slapped P.S. and hit her with a belt. Wanda and Jeanette then took P.S. into the bathroom.

The defendant went into the bathroom and saw P.S. masturbating. After that, everyone went into the living room, where Wanda refused P.S.'s request to leave.

The defendant admitted to Phelps that she wanted P.S. to be a prostitute and said that she had slapped P.S. The defendant denied she ever had other girls sell their bodies, but said that she had set up dates for other girls and that she got part of the money when they had sex with men. Phelps stated the defendant never told him that she forced P.S. to have sex on October 24.

The State rested. The defendant's motion for a directed verdict on all counts was granted as to the juvenile pimping charge, but denied as to the remaining counts.

The defendant, Colette Tennin, testified on her own behalf. She said that she only made the statement to detective Phelps because he told her that once she made the statement, she could go home to her children. She further testified that she had been refused a request to call her mother, and that she could not understand the waiver form she signed because she was in special education classes and could not read well.

She testified she was at Dedra Johnson's apartment on October 24, 1985, when P.S. arrived with Jeanette Leonard at 1 p.m. Dedra threatened P.S. and threatened the defendant because the defendant would not beat P.S.

P.S. went to the washroom, and Jeanette and Wanda followed her in. The defendant testified the door of the bathroom was open and she went in. Jeanette shut the door, and she put a potato peeler next to P.S.'s face. P.S. started crying, and the defendant asked Jeanette to stop. Jeanette refused because she was angry about P.S. having made remarks about her. The defendant left the bathroom, and when she returned, she saw P.S. sucking on her fingers. Wanda and Jeanette were laughing, and Jeanette suggested putting shaving cream in P.S.'s mouth. P.S. subsequently returned to the living room, where she ate french fries and seemed unconcerned about the incident in the bathroom. Jeanette and P.S. later left the apartment.

The defendant denied that she ever saw P.S. masturbate or that she had ever forced her to do so. Colette denied that Dedra had a car, that Dedra knew how to drive, or that Dedra or anyone else had picked P.S. up in a car. The defendant said the only man who entered the apartment while P.S. was present was Dedra's boyfriend. He did not have sex with the complainant, nor did anyone else. The defendant denied she had received any money or forced P.S. to have sex with anyone.

The jury was instructed as to accountability, and, as noted, the jury found the defendant guilty of two counts of intimidation and one count of unlawful restraint. She was acquitted of the other charges.

Defendant first contends the court erred in excluding evidence of P.S.'s prior sexual activities, because it was relevant and because it was not prohibited under section 115—7(a) of the Code of Criminal Procedure of 1963 (the rape shield law) (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a)). The State asserts the proffered evidence was properly excluded as immaterial and irrelevant to the charge of intimidation to commit prostitution.

The court granted the State's motion *in limine* prior to trial excluding such evidence. Defendant moved for reconsideration following opening arguments, contending proof of P.S.'s prior sexual conduct was relevant to the issue of whether the defendant forced her to perform acts of prostitution. The court refused, and defendant's counsel made an offer of proof. He stated he expected P.S. to testify that she had had sex with Kenny Wilson frequently, starting in late 1984, or early 1985, and that he had two to four witnesses who could impeach her if she denied those acts. He also expected P.S. to testify that she had had oral sex with another youth in 1985, and that Wanda Welch could testify from her personal knowledge that that was so. He also expected P.S. to testify that she had had sex with Joyce Leonard's boyfriend, and that she had had sex with her stepfather, and that there were two to four witnesses who could impeach her if she denied that. The trial court stated that these prior acts did not relate to whether P.S. had been forced to be a prostitute by the defendant and refused to change its earlier ruling.

■ It is true, as the defendant asserts, that the test of admissibility of evidence is whether it fairly tends to prove the particular offense charged; "whether what is offered as evidence will be admitted or excluded depends upon whether it tends to make the question of guilt more or less probable; *i.e.*, whether it is relevant (*People v. Rodgers* (1972), 53 Ill. 2d 207, 214-15)." *People v. Ward* (1984), 101 Ill. 2d 443, 455.

■ The trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or its possibly unfair prejudicial nature (*People v. Ward* (1984), 101 Ill. 2d 443, 455) or conjecture. (*People v. Rogers* (1985), 135 Ill. App. .3d 608, 624.) A trial court is given broad discretion in ruling on issues of relevancy and materiality (*People v. Andersen* (1985), 134 Ill. App. 3d 80, 98), and its ruling should not be reversed absent a clear showing of abuse of that discretion. *People v. Ward* (1984), 101 Ill. 2d

443, 455-56; *People v. Matthews* (1985), 137 Ill. App. 3d 870, 875.

■■ ■ We find defendant's contention on this issue is without merit. The purpose of the intimidation statute is to prohibit the making of specified threats intended to compel a person to act against the person's will, and the gravamen of the offense is improper influence on another. (*People v. Kittle* (1986), 140 Ill. App. 3d 951, 957; *People v. Hubble* (1980), 81 Ill. App. 3d 560, 562-63.) Evidence offered to prove a proposition which is a matter in issue or which is probative of matter in issue is "material" (*People v. Saunders* (1984), 122 Ill. App. 3d 922, 933; McCormick, Evidence § 185, at 434 (2d ed. 1972)), and evidence is admissible if it is both relevant and material. *People v. Grady* (1982), 107 Ill. App. 3d 970, 977.

■■ The asserted purpose for defendant's offer of proof here was to show that the defendant did not have to use force to cause P.S. to commit prostitution. Defendant's offer of proof, however, showed only that P.S. had previously had sexual relations and not that she had previously engaged in sexual relations for money, an essential element of the offense of prostitution. (Ill. Rev. Stat. 1985, ch. 38, par. 11—14(a).) Even if the offer of proof had included the evidence that P.S. had prostituted herself on a previous occasion, such evidence would not have been probative of whether or not she had been forced to so prostitute herself on the particular occasion in question. The court found analogous the fact that even a prostitute can be a victim of a rape and the past record of that prostitution "has nothing to do with whether she was raped at the time." The court's analogy is correct, in that the rape shield law has been held to mandate the exclusion of evidence of the victim's alleged profession as a prostitute. *People v. Newman* (1984), 123 Ill. App. 3d 43; *People v. Hughes* (1984), 121 Ill. App. 3d 992; *People v. Buford* (1982), 110 Ill. App. 3d 46.

Although, as defendant asserts, the rape shield law applies to certain offenses specifically enumerated therein (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a)), the court here did not exclude the evidence on the basis of the rape shield law, but, rather, on general grounds of relevancy and materiality. The analogy drawn by the court between the proffered evidence here and that prohibited by the rape shield law is quite cogent, however. It has been stated that the purpose behind the rape shield law is to deny the defendant an opportunity to harass and humiliate the victim at trial and divert the attention of the jury to issues not relevant to the controversy. (*People v. Lindsey* (1986), 148 Ill. App. 3d 751, 759.) The defense raised in the instant cause was essentially the same as that raised in a rape case, *i.e.*, that the complainant was not forced into the conduct in question, but, rather, con-

sented to it. However, the proof offered here that P.S. previously had sexual relations with persons she knew is simply not probative of whether the defendant forced P.S. to prostitute herself to strangers on the instant occasion.

Accordingly, we find no abuse of the court's discretion in excluding this evidence.

■ Defendant next contends the court erred in admitting the testimony of P.S.'s mother. P.S.'s mother testified that P.S. called her to pick her up at Mary Peets' house, that she in turn called the police to accompany her to the Peets' house, and that P.S. "told [her] what took place." She did not specifically testify as to what P.S. said had taken place.

The State asserts, and we agree, that this issue has been waived. Defendant neither objected to this testimony at trial nor raised it in her post-trial motion. Further, she has not argued here in reply to the State's waiver argument that the plain error doctrine should apply. Accordingly, we find this issue has been waived.

■ ■ Defendant's final contention is that the court erred in considering during sentencing a "victim impact analysis" which detailed a conversation between the probation department presentence report preparer and P.S.'s stepfather concerning the condition of P.S. and the effect that the crime had upon her. In essence, the report indicated P.S. was still under a doctor's care for the injuries she sustained, that she had lost weight, was very confused, afraid to go anywhere, "walks around in a daze," is not doing well in school, and that the incident "ruined her life." According to the report, P.S.'s mother lost her job "because of all the time off needed," and the family had to have their phone disconnected because P.S. was receiving threatening phone calls. The report also indicated P.S.'s stepfather heard that the defendant had made threats against P.S. to the effect that when "she gets out, she'll take care of [P.S.]."

The defendant objected to the impact analysis at the sentencing hearing and asked the court to disregard it. The court acknowledged the hearsay nature of the analysis and said that it should not have "too much of an impact" on the sentencing decision.

Defendant contends it was error for the court to admit the analysis by virtue of section 3(a) of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Bill of Rights) (Ill. Rev. Stat. 1985, ch. 38, par. 1403(a)) since, as in *People v. Rainey* (1986), 149 Ill. App. 3d 327, P.S. was not shown to be physically or mentally incapable of exercising her rights under the Bill of Rights. Irrespective of the source of the statement, defendant also asserts it was error for the court to

consider a written statement concerning the impact of the offense upon the victim since section 6 of the Bill of Rights provides that the victim shall make an oral statement before the court. Ill. Rev. Stat. 1985, ch. 38, par. 1406.

Defendant's reliance on *People v. Rainey* is misplaced. In that case, the mother of the 12-year-old victim of an aggravated criminal sexual assault offense prepared a written victim-impact statement and was permitted to testify at sentencing pursuant to the provisions of the Bill of Rights (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*). On appeal, the court found this was error, where the record showed the victim herself gave competent and coherent testimony at trial and there was nothing to indicate that her condition deteriorated so drastically in the 29-day interval between trial and sentencing that she was unable to prepare the statement and testify. (*People v. Rainey* (1986), 149 Ill. App. 3d 327, 331.) Where a victim is unable to exercise his or her rights, the Bill of Rights makes specific provision for who may act in the victim's stead. Ill. Rev. Stat. 1985, ch. 38, par. 1403(a).

Like the victim in *Rainey*, P.S. gave competent and coherent testimony at trial in the instant cause, and nothing in the record, including the fact she was a special education student, indicates she would not have been able to speak for herself regarding the impact of the offense upon her. However, unlike *Rainey*, P.S.'s stepfather did not testify at the sentencing hearing, and he did not prepare the written victim-impact statement. Rather, the probation department presentence report preparer spoke with P.S.'s stepfather and reduced his comments to an addendum to the presentence report. Consequently, the operative statute here is not the Bill of Rights (Ill. Rev. Stat. 1985, ch. 38, pars. 1403, 1406) as was the case in *Rainey*, but, rather, section 5—3—2 of the Unified Code of Corrections (the Code) which specifically provides that the presentence report shall set forth "the effect the offense committed has had upon the victim" (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2(a)(3)).

It has long been recognized that hearsay evidence is admissible at sentencing (*People v. Dennis* (1970), 47 Ill. 2d 120; *People v. Henderson* (1976), 39 Ill. App. 3d 1065) where the court is not bound by the ordinary rules of evidence (*People v. Ortiz* (1987), 156 Ill. App. 3d 170; *People v. Johnson* (1985), 132 Ill. App. 3d 1), and that presentence reports necessarily consist in part of hearsay and other normally inadmissible evidence. (*People v. Cole* (1974), 23 Ill. App. 3d 620, 623.) As noted, defense counsel objected to the impact analysis at the sentencing hearing and fully rebutted the assertions included therein. After counsel's argument, the court acknowledged the hear-

say nature of the analysis and its recognition that it was "not a very good statement."

In light of the foregoing, we find admission of the presentence report addendum in this case was not error.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

REINHARD and DUNN, JJ., concur.