THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY VERKRUYSSE, Defendant-Appellant.

Third District    No. 3—93—0537

Opinion filed May 12, 1994.

BARRY, J., dissenting.

John L. McGehee, of McGehee, Boling, Whitmire, Olson & Pepping, of Silvis (James J. Whitmire III, of counsel), for appellant.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Following an incident in Whiteside County, defendant, Gary Verkruysse, was charged with two counts of intimidation of two undercover Illinois conservation officers. (Ill. Rev. Stat. 1991, ch. 38, par. 12—6(a)(1).) A jury convicted defendant on one of these counts, and the circuit court of Whiteside County entered judgment on the verdict, which the defendant now appeals. We reverse.

On December 5, 1992, defendant was hunting with a group of friends on land owned by Jack Nowers in Whiteside County. Defendant testified that he noticed someone driving a blue Chevy Blazer on the land with a gun sticking out an open window. Minutes later, a uniformed conservation officer arrived and apparently issued the two individuals in the Blazer a ticket for having an uncased gun in the motor vehicle. Actually, the two men in the Blazer were undercover conservation officers, and the issuance of the ticket was a staged event.

The undercover officers drove away, and the uniformed officer then arrested defendant and other members of the hunting party for hunting without permission. However, defendant testified that he had permission to hunt on the land and was later acquitted on the charge of hunting without permission.

After being issued citations, defendant and the other members of the hunting party drove approximately two miles into Erie to get something to eat at Casey's General Store. As the group left Casey's, they saw the blue Blazer drive past the store. Defendant got into his vehicle and pulled out behind the Blazer. While the Blazer was stopped at a stop sign, defendant pulled along the left side of the Blazer. Another vehicle, driven by Mark Nitz, pulled up along the right side of the Blazer. Nitz and defendant's brother, Marty Verkruysee, exited their vehicle and walked in between the driver's side of the Blazer and the passenger's side of defendant's vehicle. Shortly thereafter, a third vehicle from the hunting party pulled up, and its occupants got out.

Officer Terry Holbrook was the driver of the Blazer, and Officer James Thomas was the passenger. Defendant, sitting in the driver's seat of his vehicle, began a conversation with Holbrook. Defendant testified that he asked the two men in the Blazer if they were conservation officers, to which Holbrook replied that they were not conservation officers. Defendant stated that Thomas replied by asking "who the fuck wants to know?"

Officer Thomas testified that defendant asked them who had given them permission to hunt and that he told defendant that Mr. Nowers gave them permission. Thomas further testified that after the officers told defendant that they were from the Neponset area, defendant told them that they "had no business hunting over here" and that "if you know what's good for you you will keep your asses on the other side of the river." Thomas then asked defendant what he would do about it, because defendant was not the landowner. Thomas testified that defendant then told him to get out of his vehicle so that they could "get it on right here."

Thomas testified that the persons who had exited their vehicles were standing outside yelling at the officers. The record indicates that both defendant and Thomas spoke in a hostile tone of voice using profane language during the confrontation. Thomas repeatedly asked defendant if he was threatening him, to which defendant replied that he was not threatening the officers. The incident occurred in a residential area on a two-way street. Defendant and the others departed the scene when motorists wanted to access the road.

It is important to note that while defendant and the others had been hunting, there was no testimony that guns were displayed by defendant or the others at any time during the incident. Nor was anyone charged with improperly carrying a firearm. The weapons were properly stored.

After a jury trial, defendant was convicted of the intimidation of Officer Thomas. Defendant appeals, raising two issues.

We first address defendant's contention that the State failed to prove him guilty of intimidation beyond a reasonable doubt. If, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found each element of intimidation beyond a reasonable doubt, we must affirm defendant's conviction. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■ The jury found defendant guilty of the crime of intimidation. This statute states:

"(a) A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another *** a threat to perform without lawful authority any of the following acts:

(1) Inflict physical harm on the person threatened or any other person or on property." Ill. Rev. Stat. 1991, ch. 38, par. 12—6(a)(1).

The purpose of the intimidation statute is to prohibit the making of threats specifically intending to compel a person to act against his will. (*People v. Downey* (1983), 120 Ill. App. 3d 456, 459, 458 N.E.2d 160.) The "gravamen of the offense is improper influence on another." (*People v. Tennin* (1987), 162 Ill. App. 3d 520, 525, 515 N.E.2d 1056.) To determine whether a defendant "threatened" someone under the meaning of the statute, the jury must examine the defendant's words and actions to determine whether they have a "reasonable tendency under the circumstances to place another in fear that the threat-maker will perform the threatened act." (*Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 962, *rev'd on other grounds sub nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758.) A defendant's intent to influence can be inferred from the defendant's statements and surrounding circumstances. *People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 1028, 486 N.E.2d 1297, *appeal denied* (1986), 111 Ill. 2d 593.

Intimidation is a specific intent crime. (*People v. Haybron* (1987), 153 Ill. App. 3d 906, 908, 506 N.E.2d 369, *appeal denied* (1987), 116 Ill. 2d 567.) Generally, specific intent is made up of two elements: the criminal defendant must have (1) intended to engage in certain acts that constitute the *actus reus* and (2) performed those acts with an intended criminal result. (1 J. Decker, Illinois Criminal Law, § 2.27, at 2—46 (2d ed. 1993).) In this case, the information alleged that defendant "with the intent to cause Jim Thomas to omit the performance of an act, being hunting on property south of the Rock River in Portland Township of Whiteside County, communicated to Jim Thomas a threat to inflict, without lawful authority, physical harm on Jim Thomas."

■ We do not believe that the State has sustained its burden in

establishing that defendant possessed the requisite specific intent to intimidate Officer Thomas. Prior to the altercation at issue, defendant was issued a citation by uniformed conservation officers for hunting without permission. Defendant was subsequently acquitted on this charge. Defendant testified that he had been given permission to hunt on the property by the owners, Jack and Jim Nowers. He had been told by Jack Nowers that if any strange vehicles came on to the property, to ask their names, and if they were not supposed to be there, to come and get him. With this situation as background, defendant confronted the undercover officers and asked them who they were and what they were doing on the property.

There are only two statements the jury could have used to find defendant guilty. Defendant was charged in two counts: one in relation to Officer Holbrook (the driver), the other in relation to Officer Thomas. The jury acquitted defendant as to the charge against Holbrook. From this verdict it must be inferred that the statements directed towards Holbrook were not the bases of defendant's conviction.

Defendant's first statement was that the officers "had no business hunting over here" and that "if you know what's good for you, you will keep your asses on the other side of the river." This statement was made generally to both Holbrook and Thomas. Obviously, this statement was not enough to sustain a conviction as to the intimidation of Holbrook. Therefore, we can assume that this statement, on its own, was insufficient to sustain a conviction for the intimidation of Thomas.

The second statement was made in response to Officer Thomas' statement as to what defendant was going to do about keeping them off the land. Only at this point, when challenged by Thomas, did defendant tell him to get out of his vehicle so that they could "get it on right here."

Thomas testified that he took defendant's statement to mean that "if I got out of the vehicle that there would be a fight and that he was challenging me to a fight." Thomas also testified that as long as he stayed in his vehicle, no one had threatened to do anything to him.

While we do not condone defendant's behavior, we do not believe that the evidence supports a finding that he specifically intended to threaten Thomas. The evidence may support a charge of assault, but falls far short of felony intimidation. Compare this "threat" with other threats that have been held to be intimidation: defendant demanded his ex-wife give him $2,500 or he would "blow her brains out" (*People v. Cole* (1978), 57 Ill. App. 3d 396, 397, 373 N.E.2d 106);

defendant threatened to kill a woman if she appeared in court to testify against him (*People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158, *appeal denied* (1977), 66 Ill. 2d 641); defendant told person to whom he had loaned money that he would break the borrower's legs if the money was not repaid (*People v. Gallo* (1973), 54 Ill. 2d 343, 352-53, 297 N.E.2d 569); and defendant told his nine-year-old sexual abuse victim that "something would happen" if the victim told anyone about the sex acts (*People v. Valko* (1990), 201 Ill. App. 3d 462, 473, 559 N.E.2d 104, *appeal denied* (1990), 133 Ill. 2d 570).

The threat at issue in the instant case was essentially an invitation to fight made after Officer Thomas goaded the defendant into taking action. Defendant's "threat" of "let's get it on" is nothing more than the reaction of one childish middle-aged man to another childish middle-aged man's baiting him to fight. These circumstances are wholly different than those in the cases cited above. As such, we find that the State failed to prove beyond a reasonable doubt that defendant specifically intended to intimidate Officer Thomas. Accordingly, defendant's conviction is reversed.

Because of our holding that the State failed to prove defendant's guilt beyond a reasonable doubt, we believe that it is unnecessary to address defendant's other issue raised on appeal.

The judgment entered on verdict by the circuit court of Whiteside County is reversed.

Reversed.

SLATER, P.J., concurs.

JUSTICE BARRY, dissenting:

The defendant appeals contending that the prosecution failed to prove him guilty of intimidation beyond a reasonable doubt. Defendant also contends that the statement made by his codefendant's counsel during closing argument that 75% was the line at which reasonable doubt is passed mandates a reversal.

If, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found each element of intimidation beyond a reasonable doubt, an appellate court should affirm the defendant's conviction. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) After reviewing the record, I believe that the evidence admitted at trial was sufficient to support the defendant's conviction. Therefore, I would affirm.

As the majority notes, the purpose of the intimidation statute (Ill. Rev. Stat. 1991, ch. 38, par. 12—6(a)(1)) is to prohibit the making

of threats which are uttered to force others to act against their will. (*People v. Tennin* (1987), 162 Ill. App. 3d 520, 525, 515 N.E.2d 1056, 1059.) The "gravamen of the offense is improper influence on another." (*Tennin*, 162 Ill. App. at 525, 515 N.E.2d at 1059.) Viewing the defendant's conduct in the totality of the circumstances, I believe that a rational trier of fact could conclude that his conduct had a "reasonable tendency under the circumstances to place another in fear that the threat-maker will perform the threatened act." *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 962, *rev'd on other grounds sub nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758.

In this case, the record indicates that three vehicles pulled up on both sides of the officers' vehicle. Several men exited their vehicles and stood in front of the officers' vehicle, while the defendant's brother stood near the driver's side window. Testimony indicates that the men were yelling at the officers, and that the defendant told Officer Thomas that he had no "f"ing business here and "if you know what's good for you you will keep your asses on the other side of the river." Additionally, the presence of guns and the fact that the confrontation took place in a hostile atmosphere cannot be ignored.

The record indicates that Officer Thomas told the defendant that the officers had permission to hunt and asked the defendant what he was going to do about keeping the officers off the land. The defendant replied by asking him to get out of his vehicle and "we'll get it on right here." The logical inference from the defendant's statements is that if Officer Thomas did not stay out of the area, or at least off of Mr. Nowers' land, the defendant would inflict physical harm upon him. I find this conduct within the scope and purpose of the intimidation statute.

The defendant argues and the majority agrees that there was no "specific act threatened" and that, as a result, no rational jury could conclude that he intended to threaten Officer Thomas as contemplated under the statute. I find this argument unpersuasive. When the circumstances are such that the threat of physical harm can be inferred, it is unnecessary that the defendant state exactly how he proposes to harm the victim. (See *People v. Valko* (1990), 201 Ill. App. 3d 462, 559 N.E.2d 104 (affirming intimidation conviction of defendant who told victim "something would happen" to him if he revealed the sex acts of the defendant).) While the cases cited by the majority on this issue are factually dissimilar from the present case, I do not believe that these cases limit the number of situations in which a jury could find that the crime of intimidation has been committed.

There was ample evidence entered at trial to support the

conclusion that the defendant warned Officer Thomas that he did not want Thomas hunting in the area and threatened them with physical harm if he did not heed his warning.

Because I would affirm the defendant's conviction, I address the defendant's contention that his trial was prejudiced by the statements of counsel for his codefendant. At trial, counsel for the codefendant told the jury during closing argument that 75% was the line beyond which the prosecution must pass to prove the defendant guilty beyond a reasonable doubt. I first note that closing arguments were not reported and the record does not reveal exactly what was said during closing arguments. In the bystander report, the trial judge stated that codefendant's counsel "made an argument to the jury that a percentage of evidence is needed to find someone guilty beyond a reasonable doubt *** [although] as the trial judge I am unable to remember the exact percentage used." It is necessary for counsel to object at trial and in a written post-trial motion to preserve an issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) The defendant made no objection to the comments made by his codefendant's counsel during closing argument either at trial or in a post-trial motion. However, the defendant argues that this court should apply the plain error doctrine and review the comments made by codefendant's counsel during closing argument.

The plain error doctrine will only be invoked when the evidence is closely balanced or the error was of such magnitude that the defendant was denied a fair trial. (*People v. Young* (1989), 128 Ill. 2d 1, 39-40, 568 N.E.2d 461, 468.) As previously discussed, my review of the record indicates that the evidence in this case was not closely balanced. Furthermore, although I agree that it was erroneous for trial counsel to attempt to attach a percentage to the self-defining concept of reasonable doubt (*People v. Speight* (1992), 153 Ill. 2d 365, 374, 606 N.E.2d 1174, 1177; *People v. Garcia* (1981), 103 Ill. App. 3d 779, 784-85, 431 N.E.2d 1234, 1239; *People v. Jenkins* (1980), 89 Ill. App. 3d 395, 398, 411 N.E.2d 1047, 1049), I note that the trial judge instructed the jury that any attempt to define the burden of beyond a reasonable doubt was erroneous, that "each word is very important and the burden is self-defining and cannot be defined." I find that this instruction cured any error and that the defendant received a fair trial. See *People v. Roe* (1992), 228 Ill. App. 3d 628, 592 N.E.2d 596 (finding prosecutor's attempt to define reasonable doubt did not deprive defendant of a fair trial).

I respectfully dissent.