THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ELEOLORE L. MOTT, Defendant-Appellant.

Fourth District   No. 4—90—0003

Opinion filed October 18, 1990.

Harold M. Jennings, of Jennings, Novick, Eggan & Ostling, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

In passing upon the severity of a sentence imposed by a circuit court in a criminal case, a reviewing court can properly alter that sentence only upon a determination the trial court breached its discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In recent years, appellate courts of this State have rarely overturned sentences on this basis. However, we conclude the severity of the sentence imposed here was a clear abuse of discretion which requires a reversal of the sentence and a resentencing.

On October 26, 1989, following a bench trial in the circuit court of McLean County, defendant Eleolore L. Mott was found guilty of two counts of reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)), which concerned separate victims. Subsequently, the court sentenced her to two concurrent extended terms of eight years' imprisonment. The imposition of an extended-term sentence pursuant to section 5—8—2(a) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)) was based upon the existence of the aggravating factor of section 5—5—3.2(b)(3) of the Code that while being convicted of reckless homicide, she was "convicted of causing the death of more than one individual" (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(3)).

In appealing the sentence, defendant makes an extended list of claims of error. We need not discuss all of these assertions, because we deem the decisive factor here is the breach of discretion by the court in imposing such a severe sentence under the totality of the circumstances presented. Reckless homicide is a Class 3 felony (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(d)(2)), for which the maximum unex-

tended term of imprisonment which could be imposed was five years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(6)) and the maximum extended-term sentence which could be imposed was 10 years for each offense (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(5)). The defendant was not subject to imposition of consecutive sentences. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4.

The evidence at trial showed on August 15, 1988, defendant drove an automobile along Veterans Parkway in Normal at a speed which one witness estimated to be 60 miles per hour and failed to stop or slow down for a red light at College Avenue. Two young men were killed in the ensuing collisions. The defendant climbed out of her vehicle and ran until stopped by a police officer who had come to the scene of the collisions. Several officers testified defendant did not respond to demands she halt.

Defendant's son, Bryan Brown, testified at trial (1) defendant had been staying with him during her vacation prior to the date of the accident; (2) on the morning of the accident defendant was not acting "normal" but was acting "childish," and did not seem to "realize what was going on"; (3) he attempted to prevent her from leaving the house, and she crawled underneath the dashboard of her automobile; (4) he was unable to prevent her from going to work, but followed her in his own car; (5) he saw an accident at the corner of College and Veterans Parkway in Normal, and saw a police officer chasing his mother; (6) he caught up with his mother, walked her to a police car and calmed her down; (7) he indicated his mother was going through divorce proceedings prior to the collision and had been exhibiting some bizarre behavior such as throwing her clothes away and throwing them in the bathtub; (8) she was walking in an odd manner, putting her feet from side to side; and (9) he was present during an interview conducted by the Normal police department and indicated defendant had a "blank" look on her face during some of the questions and that some of her answers made no sense.

One police officer testified defendant appeared to be crying when she was apprehended, and her son helped calm her down. Officers who questioned defendant upon her apprehension variously indicated (1) some of her answers did not make sense; (2) she seemed very concerned, but (3) she did not seem to understand fully what had happened.

Cheryl Gaines testified for the defense that she was the program manager of the McLean County crisis intervention team. She said she saw defendant on August 11, just four days prior to the accident. She said she went to defendant's home, where she found the defendant

was having problems with her husband. She testified that defendant appeared to be depressed, her speech was rather flat and slowed down, she had "poor concentration," and reported some sleep disturbance. She said that she and defendant agreed defendant would benefit from hospitalization at the Brokaw psychiatric unit. Gaines testified that she saw defendant on August 15, shortly after the collision occurred, and defendant appeared to be in much the same condition as she was on August 11. She said she then went to Brokaw Hospital with defendant, and defendant was checked in there.

Police officer William Nobling then testified that on August 11, 1988, he was called to a domestic disturbance at defendant's home. He said he saw the defendant holding her son and walking down the street looking for a daughter. He indicated defendant was "acting strangely, spaced out" and had a "very, very strange" stare. Nobling indicated defendant "told me that her daughter had told her that her father had killed babies, and the daughter began to cry and denied that." Nobling indicated defendant eventually left with the crisis intervention team, and when he spoke to her the next day, she said she had agreed to sign herself into Brokaw Hospital.

Defendant testified, admitting she had agreed to go to Brokaw Hospital, but stated she later had decided she did not need to do so. Instead, she said she spent the next few days at her son's house, from which she left just before the fatal collision. She testified she had not slept well the previous night, and she could not recall all of the events surrounding the collision.

A report by Dr. Bhaskar Damera, a psychiatrist, was read into evidence. It stated (1) defendant had been admitted into a psychiatric unit for depression about one week before the collision; (2) defendant had been married to a financially irresponsible person who was an alcoholic and had snatched her children from her; (3) defendant had not been sleeping well and had been throwing things away at random; (4) her affect was inappropriate; and (5) her memory impaired, and she lacked understanding of the collision. Damera stated, in his opinion, she was "suffering from significant emotional problems and due to that, she was not able to appreciate the substantial and unjustifiable risk that circumstance posed causing injuries."

A similar report by another psychiatrist, Dr. Robert Chapman, was also read into evidence. He expressed an opinion defendant suffered "inattention, lapse concentration, and preoccupation with matters other than her driving." He said these "symptoms only suddenly abated moments before the accident when she was able to possess a conscious awareness of the circumstances and took reported evasive,

albeit unsuccessful, action." He was apparently referring to evidence defendant swerved her vehicle just prior to impact. He found "no evidence of mental disease, disorder or defect present at the time of the accident, however, preoccupation with events in her life other than her immediate task [which was] consistent with the stress that she had been experiencing."

Prior to imposing sentence, the court had been presented with letters from members of the decedents' families which praised the decedents, explained their great grief and, understandably, requested severe punishment for the defendant. One stated the writer would like to cut the throat of the defendant. Another requested she receive life imprisonment. Several of the writers felt defendant had shown a lack of remorse. Similar testimony was presented at sentencing.

■■■ In explaining the reason for the sentences, the court placed most emphasis upon the fact two fine human beings had been killed. This consideration was proper as an explanation for the imposition of extended-term sentences, because multiple deaths is a factor justifying such sentences. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(3).) However, the existence of multiple deaths is not otherwise an aggravating factor as the death of the victim is inherent in the homicide offense. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138; *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) The court also considered that, in addition to the two deaths, other people were severely injured. This was a proper aggravating factor, because the additional injuries were harm resulting from defendant's criminal conduct not inherently part of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(1).) Proper consideration was also given to the great speed at which defendant drove, which would properly bear upon the degree of her recklessness. The court concluded defendant had consciously rejected needed counseling and treatment. This also bore upon the degree of her recklessness and was of a more deliberate nature than the conduct at the time of the collision.

The court's comments do not indicate it relied upon the need for deterrence in imposing sentence. In *People v. Martin* (1988), 119 Ill. 2d 453, 519 N.E.2d 884, a divided supreme court passed upon the propriety of a sentence for involuntary manslaughter. That offense has the same elements as reckless homicide but does not involve the use of a motor vehicle. (See Ill. Rev. Stat. 1987, ch. 38, par. 9—3.) The majority deemed deterrence to be of little significance when sentencing a person for an offense which involves unintentional conduct because a severe sentence would have little effect upon likely offenders.

(*Martin*, 119 Ill. 2d at 459, 519 N.E.2d at 887.) The three-judge minority dissented on waiver grounds and did not express an opinion concerning the deterring of unintentional conduct. Perhaps punishment here would encourage others with similar problems not to reject treatment as defendant did.

The record made clear defendant had never previously been convicted of a criminal offense with the possible exception of a minor traffic violation. The record gives little indication of any need to incarcerate defendant to protect the public from her. The evidence indicated her driving privileges had been revoked. That would seem to be the appropriate method of protecting the public from any danger she may present. She has not been shown to be reckless in any other way. Likewise, imprisonment does not seem to offer whatever type of treatment defendant needs to rehabilitate herself from whatever inadequacies in her makeup caused her to engage in the reckless conduct here.

In addition to the previously discussed mitigating information concerning defendant, the record shows letters from and testimony of friends of defendant, who described her as a good person and one who was needed by her children. They indicated she was not the type of person to harm others. Those who had worked with her at the Eureka Company, a manufacturer, described her as also a good and reliable worker. Several of these people recognized defendant had been under a great strain arising from her marital problems. The record did not indicate she had a problem with drugs or alcohol and neither was directly involved with her condition the day of the collision.

■ The most mitigating factor of all is the undisputed evidence of defendant's severe emotional problems. This does not exonerate her from her reckless conduct or provide a defense to it. Nevertheless, it was a matter which the sentencing court was required to consider and did consider to some extent. The extent to mitigate the punishment to be imposed upon a defendant because of emotional problems is hard to measure. However, here the evidence is overwhelming that defendant did not contrive her emotional problems, and they did substantially impair her ability to control herself.

Without question, the dominant factor behind the court's imposition of sentence here was retribution, a determination that any less sentence would deprecate the horrible damage defendant had brought about. We recognize the court was well within its discretion in denying probation and imposing imprisonment. The breach of discretion occurred in placing so much weight upon retribution against this otherwise law-abiding and substantially impaired defendant as to impose

an extended sentence which amounted to 80% of the maximum permitted by law. This is what requires resentencing.

Many of defendant's claims of error are encompassed by the explanations we have given for our reversal. Several others are waived for failure to properly preserve the issue.

■■ In regard to one matter which might recur at resentencing, we call attention to sections 5—4—1(a)(6) and (a)(7) of the Code. (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—4—1(a)(6), (a)(7).) Section 5—4—1(a)(6) permits victims of violent crimes to make written statements of the impact of a crime upon them to be presented to the court at sentencing and to testify at sentencing. Section 5—4—1(a)(7) permits, in cases of reckless homicide, as here, the spouse, guardian, parent or "other immediate family members" the opportunity to testify orally at sentencing. Persons not so qualifying should not be permitted to proceed at resentencing under subsections (a)(6) and (a)(7) above. However, persons not fitting the above categories may otherwise testify as to matters admissible in mitigation or aggravation.

As we have explained, the sentences previously imposed must be and are hereby reversed. The cause is remanded for resentencing.

Reversed and remanded.

KNECHT, P.J., and LUND, J., concur.