THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN P. PAVLOVSKIS, Defendant-Appellant.

Second District   No. 2—90—1157

Opinion filed June 10, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:
Defendant, John Pavlovskis, appeals from his conviction and sentence of 50 years' imprisonment for the crime of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)), which was ordered to run consecutively to his sentence of 10 years' imprisonment for the crime of aggravated kidnapping (Ill. Rev. Stat. 1989, ch. 38, par. 10—2(a)(1)). Defendant raises the issues of whether a therapist may supply evidence concerning the psychological impact of the crime upon the victim when section 6 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 1406) provides only the victim or her family may supply the statement; and whether the therapist in the present cause was qualified to provide the victim impact evidence.

Defendant pleaded guilty to the above crimes. The prosecutor read a factual basis for the plea. The victim, a nine-year-old girl, was walking home with her sister and a friend in Janesville, Wisconsin. Defendant was standing near a car. He told the victim that he was a police officer and that he wanted her to help him find a little girl

whose picture he displayed. He grabbed her by the head and forced her into the car. He drove to a liquor store and put her in the trunk of the car.

From Wisconsin defendant motored into Winnebago County, Illinois, where he drove to a rural field and the car became stuck in mud. After he made her push the car out of the mud, he drove to a store where he bought pop and allowed her to call home, but the phone line was busy. He then drove to another field where he sexually penetrated her vagina and anus. They drove to another field where he again penetrated her vagina and anus. After further driving, the victim fell asleep, but was awakened by defendant attempting to make her perform fellatio. Defendant then drove her to her home in Wisconsin.

At the sentencing hearing, the State introduced Pat Graham-Toohey as its only witness. She was the educational services supervisor for Family Advocate, Inc., an agency funded by the United Way to provide therapy to abused children and their families. She had 13 years' experience there and was responsible for the initial intake of all victims, training of new staff, supervision of four master level therapists and coordinating the interview rooms. The agency provided counseling at the time of the immediate crisis and also long-term counseling for victims who need more help resolving the effects of abuse. She herself had performed both crisis intervention work and long-term counseling since 1985. She had worked with over 750 children in a variety of capacities. She had a college degree in human relations and attended numerous seminars and workshops regarding child sexual victimization.

The prosecutor asked Pat Graham-Toohey about the negative effects of sexual abuse and assault. When defense counsel objected that she had not been qualified as an expert, the trial court allowed her to answer because she had practical experience. She responded that victims frequently feel hurt, damaged or different as a result of the assault. They feel that they have lost control over their bodies and of their environment. They feel helplessness and anger in many cases.

Graham-Toohey interviewed the victim in a one-on-one relation in eight-hour or longer sessions. Graham-Toohey also talked with the victim's mother via telephone. Graham-Toohey prepared a victim impact statement based in part on her personal contact with the victim, the medical report and a report made by a clinical psychologist, Dr. Michael Michalik. He was a psychologist in Rockford with experience in assessing victims of sexual assault. The medical report and Dr. Michalik's evaluation were admitted into evidence.

Graham-Toohey described her interview with the victim. The victim was initially cooperative, but when they traced the events of the day of the occurrence, she started to tremble. Her eyes started to tear, and she pulled her legs up to her chest and her arms around her body. Her voice became barely audible. She could not control her trembling.

At later sessions, the victim told Graham-Toohey that she was afraid to go outside her house. She was afraid to go to bed and found it hard to fall asleep. She was afraid of cars similar to defendant's and of men who resembled him. She felt her body was hurt or damaged from the intrusiveness of the assaults. She found it hard to look in a mirror because she felt that other people could tell just by looking at her that something was wrong with her. Based on defense counsel's objection, the trial court prohibited Graham-Toohey from testifying about whether these problems related to an emotional disorder; since she was not an expert, she could not make a diagnosis. However, the court permitted her to testify that the victim's behavior was consistent with Dr. Michalik's diagnosis.

At later sessions, Graham-Toohey worked with the victim to help her face the horror and terror she felt even though the victim was afraid to face her emotions. The victim told Graham-Toohey how much pain she felt and that she had never been so afraid as she had during the offense. She began to tremble and to get tearful again. During the kidnapping, she concentrated on pleasant memories of her past and the details of the car.

On cross-examination, Graham-Toohey admitted that the victim had never used the words "damaged," "horror," "terror," or "incredible." These words came from Graham-Toohey's subjective opinion of what the victim felt. She realized that, to some degree, subjective opinions should not influence her work. Graham-Toohey did not study the area of child abuse in college or take graduate level courses in it. Her training arose from going to seminars, working with 750 victims over 13 years, and reading books. She was not certified by any governmental agency, but she knew of no available tests to show that she was qualified. Other people could do the work without formalized training. Dr. Michalik frequently referred victims to the Family Advocate for treatment. Although he had a doctorate degree, she said his qualifications did not exceed hers because he was only a clinical psychologist while her experience was in the field of child sexual abuse. She considered his report when she wrote the victim impact statement.

On redirect examination, Graham-Toohey explained that she used the words "terror" and "horror" because the victim had a limited vocabulary. Graham-Toohey observed those traits in the victim's demeanor as evidenced by the trembling. Family Advocate was licensed.

Defendant's former fiancee and another friend testified in mitigation for defendant, especially in regard to his alcohol problem. Following the allocution and the arguments of counsel, the trial court sentenced defendant to 50 years' imprisonment for the aggravated sexual assault and 10 years' imprisonment for the kidnapping. The trial court stated it considered the presentence report, the arguments, the statutes, the allocution, the cruelty of the offense itself, the emotional impact upon the victim, a 25-year-old conviction, the alcohol problem and the threat to society which defendant represented.

The victim impact statement was attached to the presentence report as an addendum. It shows a few differences from the psychological evaluation prepared by Dr. Michalik. The evaluation noted that the victim was feeling safe when she was home. She was trying to minimize the experience. She was affected with low self-esteem and a moderate distortion of cognitive functions. She was very guarded and had a suppression of affect frequently seen in children who had experienced a major emotional trauma. Dr. Michalik was surprised that her outlook on life was quite optimistic. His diagnosis of her was post-traumatic stress disorder. Dr. Michalik recommended counseling through Family Advocate to help her work through her negative feelings.

The victim impact statement written by Pat Graham-Toohey described the victim as being extremely fearful of being alone. She was afraid to play outside with friends. On a family camping trip, the rural scenes reminded her of the abduction. Most of the items in the report were the same as those items repeated in Graham-Toohey's testimony. The report notes the findings of Dr. Michalik's evaluation in several points. However, it also states that "during the course of her development and maturation, the girl can be expected to experience varying levels of terror and helplessness, body integrity concerns, and rage stemming from the trauma inflicted upon her." This last statement was quoted by the trial court when it discussed the reasons for the lengthy sentence.

Defendant contends that the trial court should not have considered the victim impact statement because it was not written by a person authorized by the statutes. Section 6 of the Act provides that where a victim of a violent crime is present in the courtroom at the time of sentencing, she, upon her request, shall have the right to ad-

dress the court regarding the impact which the defendant's criminal conduct has had upon her. If the victim chooses to exercise this right, "the impact statement must have been prepared in writing in conjunction with the Office of the State's Attorney prior to the initial hearing or sentencing, before it can be presented orally at the sentencing hearing." (Ill. Rev. Stat. 1989, ch. 38, par. 1406.) Section 3 of the Act defines "victim" as the actual person who suffered the injury as well as the parents or siblings of a victim who is physically or mentally incapable of exercising her rights. (Ill. Rev. Stat. 1989, ch. 38, par. 1403(a).) Section 3 of the Bill of Rights for Children (Ill. Rev. Stat. 1989, ch. 38, par. 1353) provides that, where the victim is a child, the parents or guardians shall have the right to address the court regarding victim impact.

In addition to those statutory provisions, section 5—4—1(a)(6) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(a)(6)) directs the trial court to afford the victim the opportunity to make a statement concerning the impact of the crime provided that the statement is prepared in writing in conjunction with the State's Attorney prior to the hearing. The trial court should also consider the presentence report (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(a)(2)), which should set forth the effect the offense had upon the victim (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—2(a)(3)).

Defendant notes that no testimony or written statements of the nine-year-old victim or her parents were either incorporated into the statement or produced at the hearing. Instead, an employee of Family Advocate, Inc., with no formal training presented her own assessment of the effect of the assault upon the victim. Defendant contends that Graham-Toohey was neither authorized nor qualified to present the evidence. Also, defendant contends that even if Graham-Toohey's assessment could be included in the presentence report, she was not authorized to testify at the hearing.

The State first argues that the issue is waived because trial counsel did not specifically raise it during his motion to reconsider the sentence. Counsel did, however, state in his motion for reconsideration that he wanted to reiterate the arguments he made at the sentencing hearing. In light of the extensive arguments made at the sentencing hearing, the timely objections to the testimony and the written statement (cf. *People v. Israel* (1989), 181 Ill. App. 3d 851, 865 (defendant accepted victim's psychiatrist as an expert witness); *People v. Lybarger* (1990), 198 Ill. App. 3d 700, 703 (defendant did not object to impact statement by victim's therapist)), and the fact that a victim impact statement affects the fundamental fairness of the hearing (*People*

*v. Phillips* (1989), 127 Ill. 2d 499, 536), we may relax the waiver rule and review the matter under the plain error doctrine (127 Ill. 2d at 536).

Victim impact statements are admissible during the sentencing phase of a criminal trial. (*Payne v. Tennessee* (1991), 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597; *People v. Felella* (1989), 131 Ill. 2d 525, 536.) The impact evidence may also be introduced in the presentence report. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—2(a)(3); *People v. Tennin* (1987), 162 Ill. App. 3d 520, 527.) The evidence should be relevant and reliable to be admitted. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 494-96; *People v. Howard* (1991), 147 Ill. 2d 103, 158; *People v. Spears* (1991), 221 Ill. App. 3d 430, 437; *Tennin*, 162 Ill. App. 3d at 527.) The foreseeable consequences of a defendant's actions upon a victim and her family are relevant to the sentencing determination. *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 746-47.

Section 5—3—2 of the Code requires that a presentence report set forth the effect of an offense upon the victim. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—2(a)(3); *People v. Bachman* (1981), 92 Ill. App. 3d 419, 424-25.) In addition, the trial court must consider as a factor in aggravation whether the defendant's conduct caused or threatened serious harm. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(1).) Psychological harm caused by a child molester is a proper consideration in aggravation. (*People v. Fisher* (1985), 135 Ill. App. 3d 502, 506.) Emotional harm to minors from sexual abuse is nearly inevitable. *Scudder v. Hanover Insurance Co.* (1990), 201 Ill. App. 3d 921, 929.

■ Thus, Graham-Toohey could testify concerning aggravation and mitigation. While she was not qualified to make a statement pursuant to section 5—4—1(a)(6), she could still testify concerning the other matters. (See *People v. Mott* (1990), 204 Ill. App. 3d 573, 579.) Section 5—4—1(a)(6) of the Code and section 6 of the Act are inapplicable to the situation where the therapist is called as a witness by the State to present evidence in aggravation. (*People v. Estrella* (1988), 170 Ill. App. 3d 292, 295.) These statutory sections give the victim a right to be heard on her own motion rather than on the motion of the State. (170 Ill. App. 3d at 296-97.) Thus, because the victim was not making an impact statement on her own pursuant to the Act, the restrictions of section 6 of the Act did not apply. 170 Ill. App. 3d at 297.

We also note here that some procedural safeguards were present before the trial court. Graham-Toohey testified with regard to a written report made available to defendant. She was available for extensive cross-examination. Some of Graham-Toohey's testimony con-

cerned facts which she herself observed, especially how the victim would draw herself into a defensive posture, cry and tremble when her attention was drawn to the scene of the crime, and would qualify as lay testimony. (See *People v. McDarrah* (1988), 175 Ill. App. 3d 284, 293.) It is unlikely that a nine-year-old girl could provide the testimony showing the true extent of her psychological trauma. (*Cf. Israel*, 181 Ill. App. 3d at 865 (eight-year-old girl emotionally unable to testify regarding impact).) The matter could be, and in the case before us was, appropriately addressed by an expert witness rather than the victim herself.

■■ The next issue is whether Graham-Toohey was qualified to present the evidence regarding the future impact on the victim. We find no abuse of the trial court's discretion in its determination that she gained enough practical experience from treating 750 abused children that she could predict the harm that would be suffered by the victim in the cause before the court. (See *People v. Server* (1986), 148 Ill. App. 3d 888, 897-99.) No less than formal academic training, practical experience in a field may serve to qualify a witness as an expert on a particular subject. (*Schaffner v. Chicago & Northwestern Transportation Co.* (1989), 129 Ill. 2d 1, 37.) We also note that the trial court did not allow Graham-Toohey to overstep the bounds of her expertise. (*Cf. People v. Bradley* (1988), 172 Ill. App. 3d 545, 550-51 (expert allowed to describe symptoms of child abuse victims but not the existence or nature of a syndrome).) The matter of the psychological diagnosis was left to the psychologist's report.

Defendant urges that the sentencing hearing not be converted into a trial on the question of victim impact, which is not a stated objective of the Unified Code of Corrections. Defendant argues that the Code focuses on the protection of society and the rehabilitation of offenders (see Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—2) rather than exacting a particularized form of revenge for an individual victim of a crime. However, another purpose of the Code is to prescribe sanctions proportionate to the seriousness of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—2(a).) With the assault of a child, the testimony of an expert may be necessary to explain the significance and extent of the harm to a child where the commission of the crime is otherwise described in mere technical and sanitized words and the victim is unable to articulate the harm or is unaware of the future longevity of her trauma.

Moreover, the Supreme Court in *Payne* addressed defendant's concern that the sentencing not degenerate into a "mini-trial" on the victim's character. (*Payne*, 501 U.S. at 823, 115 L. Ed. 2d at 734,

111 S. Ct. at 2607.) Trial courts are charged with the duty of weighing all the factors in mitigation and aggravation (see *Payne*, 501 U.S. at 822, 115 L. Ed. 2d at 733, 111 S. Ct at 2606; *Phillips*, 127 Ill. 2d at 535-37; *La Pointe*, 88 Ill. 2d at 493), of which the victim impact is only an additional factor (*Payne*, 501 U.S. at 824-25, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608; *People v. Johnson* (1992), 149 Ill. 2d 118, 153). By considering all the factors, the trial court can prevent the proceedings from becoming a mini-trial concerning the victim's character; trial courts can competently exclude irrelevant and inflammatory evidence. (See *Payne*, 501 U.S. at 831, 115 L. Ed. 2d at 739, 111 S. Ct. at 2612 (O'Connor, J., concurring); *Hernandez*, 204 Ill. App. 3d at 747.) Thus, we find no error in allowing a trial court to consider the testimony of an expert witness concerning the impact on the victim.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

INGLIS, P.J., and DUNN, J., concur.